[2 NE3d 221, 979 NYS2d 257]

GARY CRUZ et al., Appellants, v TD BANK, N.A., Respondent.

GERALDO F. MARTINEZ et al., Appellants, v CAPITAL ONE BANK, N.A., Respondent.

Argued October 15, 2013; decided November 21, 2013

**POINTS OF COUNSEL**

*Law Offices of G. Oliver Koppell & Associates*, New York City (*G. Oliver Koppell* and *Daniel F. Schreck* of counsel), for appellants in the first and second above-entitled proceedings. I. Judgment debtors have private rights of action against banks for violating the Exempt Income Protection Act. (*Aspen Indus. v Marine Midland Bank*, 52 NY2d 575; *Broome v Citibank*, 166 Misc 2d 283; *Minzer v Heffner Agency*, 214 AD2d 547; *Goldberg v Active Fire Sprinkler Corp.*, 194 AD2d 765; *Mazzuka v Bank of N. Am.*, 53 Misc 2d 1053; *Salles v Chase Manhattan Bank*, 300 AD2d 226; *Walter v Doe*, 93 Misc 2d 286; *Deary v Guardian Loan Co., Inc.*, 534 F Supp 1178; *Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161; *Foy v 1120 Ave. of the Ams. Assoc.*, 223 AD2d 232.) II. Judgment debtors cannot seek money damages and injunctive relief for Exempt Income Protection Act violations under special proceedings. (*Commonwealth*

*of the N. Mariana Is. v Canadian Imperial Bank of Commerce,* 21 NY3d 55; *Guardian Loan Co. v Early,* 47 NY2d 515; *Jonas v Citibank, N.A.,* 414 F Supp 2d 411; *Matter of Sharon Towers v Bank Leumi Trust Co. of N.Y.,* 250 AD2d 509; *Nejeidi v Republic Natl. Bank of N.Y.,* 227 AD2d 392; *Herman v Siegmund,* 69 AD2d 871; *Midland Funding LLC v Roberts,* 37 Misc 3d 617; *Paz v Long Is. R.R.,* 241 AD2d 486; *Costello v Casale,* 39 AD3d 797; *Aspen Indus. v Marine Midland Bank,* 52 NY2d 575.)

*Duane Morris LLP,* Philadelphia, Pennsylvania (*Alexander D. Bono* and *Ryan E. Borneman* of counsel), for TD Bank, N.A., respondent in the first above-entitled proceeding. I. The Exempt Income Protection Act does not expressly create a private right of action against banks, or permit plenary actions generally against banks. (*Matter of Orens v Novello,* 99 NY2d 180; *Engine Mfrs. Assn. v South Coast Air Quality Management Dist.,* 541 US 246; *Morales v County of Nassau,* 94 NY2d 218; *Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health,* 84 NY2d 252; *Hardy v New York City Health & Hosps. Corp.,* 164 F3d 789; *United States v Smith,* 499 US 160; *People v Grasso,* 42 AD3d 126; *Rhodes v Herz,* 27 Misc 3d 722; *Slattery v United States,* 635 F3d 1298; *National Railroad Passenger Corporation v National Assn. of Railroad Passengers,* 414 US 453.) II. The Exempt Income Protection Act does not imply a private right of action against banks. (*Sheehy v Big Flats Community Day,* 73 NY2d 629; *Uhr v East Greenbush Cent. School Dist.,* 94 NY2d 32; *CPC Intl. v McKesson Corp.,* 70 NY2d 268; *Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314; *Mark G. v Sabol,* 93 NY2d 710; *McLean v City of New York,* 12 NY3d 194; *Guardian Loan Co. v Early,* 47 NY2d 515; *Maimonides Med. Ctr. v First United Am. Life Ins. Co.,* 35 Misc 3d 570.) III. If a private right of action exists against banks for Exempt Income Protection Act violations, then the New York Legislature has prescribed special proceedings as the exclusive mechanism for judgment debtors to seek relief. (*Herman v Siegmund,* 69 AD2d 871; *Guardian Loan Co. v Early,* 47 NY2d 515; *McCarthy v Wachovia Bank, N.A.,* 759 F Supp 2d 265; *Matter of Sharon Towers v Bank Leumi Trust Co. of N.Y.,* 250 AD2d 509; *Paz v Long Is. R.R.,* 241 AD2d 486; *Denny v Ford Motor Co.,* 87 NY2d 248.)

*McGuireWoods LLP,* New York City (*Robert Plotkin* of counsel), *McGuireWoods LLP* (*Nicholas B. Lewis,* of the District of Columbia bar, admitted pro hac vice, of counsel) and *McGuireWoods LLP* (*Matthew A. Fitzgerald,* of the Virginia bar, admitted

pro hac vice, of counsel) for respondent in the second above-entitled proceeding. I. CPLR 5239 allows judgment debtors to seek money damages and injunctive relief against banks in special proceedings. (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *Cadles of Grassy Meadows II, L.L.C. v Katz*, 2008 NY Slip Op 32674[U]; *Guardian Loan Co. v Early*, 47 NY2d 515; *Herman v Siegmund*, 69 AD2d 871; *Matter of Kitson & Kitson v City of Yonkers*, 10 AD3d 21; *Matter of Sharon Towers v Bank Leumi Trust Co. of N.Y.*, 250 AD2d 509; *Shelly v Doe*, 173 Misc 2d 200; *Nejeidi v Republic Natl. Bank of N.Y.*, 227 AD2d 392; *McCarthy v Wachovia Bank, N.A.*, 759 F Supp 2d 265; *Jonas v Citibank, N.A.*, 414 F Supp 2d 411.) II. The Exempt Income Protection Act creates no express private right of action for judgment debtors against banks outside of special proceedings. (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *Deary v Guardian Loan Co., Inc.*, 534 F Supp 1178; *Walter v Doe*, 93 Misc 2d 286; *Mazzuka v Bank of N. Am.*, 53 Misc 2d 1053; *Aspen Indus. v Marine Midland Bank*, 52 NY2d 575; *Matter of Sumitomo Shoji New York v Chemical Bank N.Y. Trust Co.*, 47 Misc 2d 741; *Nardone v Long Is. Trust Co.*, 40 AD2d 697; *Sheehy v Big Flats Community Day*, 73 NY2d 629; *Whitman v American Trucking Assns., Inc.*, 531 US 457; *Mark G. v Sabol*, 93 NY2d 710.) III. Under *Sheehy v Big Flats Community Day* (73 NY2d 629 [1989]), the Exempt Income Protection Act contains no implied private right to bring a plenary action. (*Mark G. v Sabol*, 93 NY2d 710; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32; *City of New York v SmokesSpirits.Com, Inc.*, 12 NY3d 616; *People v Grasso*, 42 AD3d 126; *McCarthy v Wachovia Bank, N.A.*, 759 F Supp 2d 265; *Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *Grabois v Jones*, 88 NY2d 254.)

*AARP Foundation Litigation*, Washington, D.C. (*Julie Nepveu* of counsel), *New Economy Project Inc.*, New York City (*Claudia E. Wilner* of counsel), and *St. John's University School of Law*, Jamaica (*Gina M. Calabrese* of counsel), for AARP and others, amici curiae. I. Account holders have a private right of action against banks that wrongfully restrain exempt funds. (*Jackson v Bank of Am., N.A.*, 40 Misc 3d 949; *Walter v Doe*, 93 Misc 2d 286; *Warren v Delaney*, 98 AD2d 799; *Fuentes v Shevin*, 407 US 67; *Schaeffer v Chemical Bank*, 107 Misc 2d 548; *Nejeidi v Republic Natl. Bank of N.Y.*, 227 AD2d 392; *Herman v Siegmund*, 69 AD2d 871; *Lincoln Fin. Servs., Inc. v Miceli*, 17 Misc 3d 1109[A], 2007 NY Slip Op 51893[U]; *Matter of Sharon Towers v*

*Bank Leumi Trust Co. of N.Y.*, 250 AD2d 509; *Jonas v Citibank, N.A.*, 414 F Supp 2d 411.) II. This Court should also recognize an implied private right of action against banks for violations of the Exempt Income Protection Act. (*Sheehy v Big Flats Community Day*, 73 NY2d 629; *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32; *Chase Bank USA, N.A. v Greene*, 24 Misc 3d 1233[A], 2009 NY Slip Op 51716[U]; *Portfolio Recovery Assoc., LLC v Calderia*, 24 Misc 3d 1165; *Philpott v Essex County Welfare Bd.*, 409 US 413; *Washington State Dept. of Social & Health Servs. v Guardianship Estate of Keffeler*, 537 US 371; *Bowen v City of New York*, 476 US 467; *Dionne v Bouley*, 757 F2d 1344.)

*Sullivan & Cromwell LLP*, New York City (*Bruce E. Clark, Nicolas Bourtin, Adam R. Brebner* and *Zeh S. Ekono* of counsel), for New York Bankers Association, amicus curiae. A private right of action by judgment debtors against banks for violations of the Exempt Income Protection Act cannot be implied. (*Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207; *Sheehy v Big Flats Community Day*, 73 NY2d 629; *Rhodes v Herz*, 84 AD3d 1; *Alexander v Sandoval*, 532 US 275; *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314; *Matter of Stray from the Heart, Inc. v Department of Health & Mental Hygiene of the City of N.Y.*, 20 NY3d 946; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32; *McLean v City of New York*, 12 NY3d 194; *Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *LR Credit 21, LLC v Burnett*, 40 Misc 3d 854.)

**OPINION OF THE COURT**

Graffeo, J.

Plaintiffs are judgment debtors whose bank accounts were "frozen" by judgment creditors in anticipation of enforcement of a money judgment pursuant to CPLR article 52. Plaintiffs allege that the restraints were invalid because their banks failed to comply with requirements imposed on financial institutions under the Exempt Income Protection Act of 2008 (EIPA). That legislation compels banks served with restraining notices by judgment creditors to forward certain forms to judgment debtors intended to assist them in asserting potential claims that their accounts contain funds that are exempt from restraint or execution. In this case, we have been asked by the United States Court of Appeals for the Second Circuit to resolve whether

plaintiffs may bring plenary actions in federal court against their banks seeking money damages allegedly arising from the banks' failures to send the forms, among other deficiencies. Before addressing the questions certified to us by that Court, it is necessary to describe CPLR article 52 and the EIPA in some detail.

CPLR Article 52 and the EIPA:

CPLR article 52 sets forth procedures for the enforcement of money judgments in New York, which may include the imposition of a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding. Under both federal and state law, certain types of funds are exempt from restraint or execution, including Social Security benefits, public assistance, unemployment insurance, pension payments and the like (see generally CPLR 5205). Although the clear legislative intent is that funds of this nature are not to be subject to debt collection (and therefore excluded from any pre-execution restraint), prior to 2008 banks served with restraining notices often inadvertently froze accounts containing income from these sources, leaving judgment debtors without access to much-needed exempt monies.

The EIPA was intended to ameliorate this problem, amending certain existing statutes in CPLR article 52 and adding a new CPLR 5222-a (L 2008, ch 575). The amendments restricted the scope of the restraint that can be implemented against the bank account of a natural person and created a new procedure aimed at ensuring that this class of judgment debtors is able to retain access to exempt funds. In substance, subject to limited exceptions consistent with federal law, the EIPA precludes a bank from restraining baseline minimum balances in a "natural person's" account absent a court order. Specifically, $2,500 is free from restraint "if direct deposit or electronic payments reasonably identifiable as statutorily exempt payments . . . were made to the judgment debtor's account during the forty-five day period preceding" the restraint (CPLR 5222 [h]). Otherwise, the statute excludes from restraint an amount that corresponds to 90% of 60-days wages under the federal or state minimum wage laws, whichever is greater, to be periodically adjusted—$1,740 as of July 2009 (CPLR 5222 [i]).

In addition to limiting the scope of a restraint, the EIPA added new notification and claim procedures in CPLR 5222-a intended

to educate judgment debtors concerning the types of funds that are exempt from restraint or execution in order to facilitate the filing of exemption claims. A judgment creditor restraining a bank account (in anticipation of a sheriff's execution by levy or court-ordered transfer of assets) must serve the bank with specific forms: two copies of the restraining notice, an exemption notice and two exemption claim forms (CPLR 5222-a [b] [1]). The restraint is void if the judgment creditor fails to provide these documents to the bank; in that event, the bank "shall not restrain the account" (CPLR 5222-a [b] [1]), nor can the bank charge fees associated with a restraint (CPLR 5222 [j]).

CPLR 5222-a also imposes a new obligation on financial institutions because it compels banks to mail to judgment debtors (the account holders) copies of the exemption notices and exemption claim forms received from judgment creditors (CPLR 5222-a [b] [3]). The statute states, however, that "[t]he inadvertent failure by a depository institution to provide the notice required . . . shall not give rise to liability on the part of the depository institution" (CPLR 5222-a [b] [3]). The notice advises the judgment debtor that the bank account is being restrained, describes the categories of funds that are exempt from restraint, and provides information concerning how to seek vacatur of the money judgment to avoid a subsequent transfer of the funds to the judgment creditor (CPLR 5222-a [b] [4] [a]). The exemption claim form lists specific income sources that are not subject to restraint or execution (such as Social Security benefits, unemployment insurance, child support, veteran's benefits, etc.) and directs the debtor to check the box next to any applicable exempt funds that have been deposited in the account (CPLR 5222-a [b] [4] [b]). The debtor is then advised to return one copy of the claim form to the bank and the other to the creditor (or its representative) within 20 days (CPLR 5222-a [b] [4] [b]). If 25 days have elapsed and the bank has not received an exemption claim form from the judgment debtor, all funds in the account in excess of the applicable statutory minimum remain subject to the restraining notice (CPLR 5222-a [c] [5]). However, a failure to return the claim form may not be interpreted as a waiver of any exemption the judgment debtor may possess (*see* CPLR 5222-a [h]).

Upon receipt of an exemption claim form from the account holder, the bank must notify the judgment creditor "forthwith" of the exemption claim and the creditor then has eight days to object (CPLR 5222-a [c] [2], [3]). If no objection is lodged, the

restraint is lifted with respect to the disputed funds and the monies are released to the judgment debtor (CPLR 5222-a [c] [3]). To object to an exemption claim, the creditor must timely commence a special proceeding under CPLR 5240, serving papers on both the debtor and the bank before the expiration of the eight-day objection period (CPLR 5222-a [d]). Within seven days of commencement of the proceeding, a hearing is to be held before a court, resulting in issuance of a judicial decision no later than five days after the hearing (CPLR 5222-a [d]). In the meantime, the bank is required to hold the disputed funds for 21 days unless a court order directs otherwise; if 21 days pass and no judicial resolution of the exemption issue is forthcoming, the bank must release the disputed funds to the judgment debtor (CPLR 5222-a [e]). Another subdivision imposes special liability upon judgment creditors that object to exemption claims in bad faith (CPLR 5222-a [g]).

The EIPA did not alter the preexisting provisions in CPLR article 52 permitting the commencement of special proceedings whereby creditors, debtors and "any interested person" can adjudicate disputes over the ownership of income or property (CPLR 5239, 5221), nor did it restrict the power of the court to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure" (CPLR 5240).

The Federal Litigation:

The certified questions before us arose from two separate federal lawsuits—*Cruz v TD Bank, N.A.* and *Martinez v Capital One Bank, N.A.* Both actions were initiated by judgment debtors who brought putative class actions seeking injunctive relief and money damages against their banks based on allegations that accounts they held at New York branches were restrained in violation of the EIPA. In *Cruz*, plaintiffs alleged that, when restraining notices were sent to the bank, the judgment creditors failed to include the exemption notices and claim forms that were required under CPLR 5222-a and, as a consequence, TD Bank never forwarded these forms to plaintiffs. They claimed that the bank nonetheless restrained the funds in their accounts, and charged them related bank fees, in violation of statutory requirements. The *Martinez* plaintiffs similarly contended that Capital One did not forward the required exemption notices and claim forms, also asserting other violations of

the EIPA. As redress for these alleged wrongs, plaintiffs sought monetary damages, including reimbursement of funds restrained and disbursed in error as well as any consequential damages caused by the lack of access to funds. In each case, plaintiffs alleged that the respective financial institutions employed a general practice of noncompliance with the EIPA, seeking class action relief on behalf of themselves and other similarly-situated New York account holders. Plaintiffs also attempted to pursue various common-law tort claims that are beyond the scope of the questions certified to this Court.

As relevant here, TD Bank and Capital One moved to dismiss the complaints, contending that the EIPA does not create a private right of action permitting an account holder to bring a plenary action in federal court against a depository bank seeking injunctive relief or money damages arising from a violation of the EIPA.[1] The motions to dismiss were granted in each case (*see Cruz v TD Bank, N.A.*, 855 F Supp 2d 157 [SD NY 2012]; *Martinez v Capital One, N.A.*, 863 F Supp 2d 256 [SD NY 2012]). After reviewing the statutory scheme as a whole, including the EIPA amendments, the District Courts found no basis to imply a private right of action given the comprehensive nature of the CPLR article 52 enforcement scheme. Both rejected plaintiffs' arguments that the clause exempting a bank from liability for inadvertent failure to forward the required notices and forms should be interpreted, by negative implication, to impose liability for other types of EIPA violations.

Plaintiffs appealed to the United States Court of Appeals for the Second Circuit, which consolidated their cases for the purpose of appeal only. After reviewing CPLR article 52, including the EIPA, the court concluded that the cases presented novel issues of New York law that should be resolved by this Court, certifying the following questions:

> "*first*, whether judgment debtors have a private right of action for money damages and injunctive relief against banks that violate EIPA's procedural requirements; and

---

1. The banks also disputed plaintiffs' factual allegations. For example, Capital One submitted an affidavit from its New York operations supervisor contending that the bank had promptly implemented the EIPA and that its business records indicated that it had timely mailed the required forms to plaintiffs upon receipt of restraining notices from their judgment creditors but plaintiffs never returned completed claim forms. However, since the allegations arise in the posture of a motion to dismiss, we assume plaintiffs' allegations to be true, as did the Second Circuit.

"*second*, whether judgment debtors can seek money damages and injunctive relief against banks that violate EIPA in special proceedings prescribed by CPLR Article 52 and, if so, whether those special proceedings are the exclusive mechanism for such relief or whether judgment debtors may also seek relief in a plenary action" (711 F3d 261, 271 [2d Cir 2013]).

We accepted the certified questions (21 NY3d 906 [2013]).

The first certified question was directly presented in the federal litigation. There, plaintiffs conceded that the EIPA did not expressly create a private right of action permitting a judgment debtor to sue a bank for violation of the statutory requirements. To the contrary, the only provision addressing a bank's liability is a safe harbor clause stating that the inadvertent failure to provide the required notices and forms to the account holder "shall not give rise to liability on the part of the depository institution" (CPLR 5222-a [b] [3]). In the absence of an express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of the statute "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history" (*Carrier v Salvation Army*, 88 NY2d 298, 302 [1996] [internal quotation marks and citations omitted]). This determination is predicated on three factors:

"(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]).

We have repeatedly recognized the third as the most important because

"the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory

scheme" (*id.* at 634-635 [citation omitted]; *see Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32 [1999]).

We have therefore declined to recognize a private right of action in instances where "[t]he Legislature specifically considered and expressly provided for enforcement mechanisms" in the statute itself (*see Mark G. v Sabol*, 93 NY2d 710, 720 [1999]).

For example, in *Sheehy* we held that plaintiff, a minor who was sold alcohol in violation of the Penal Law, could not sue the seller to recover for injuries she sustained as a result of her ensuing intoxication. Although plaintiff satisfied the first two prongs of the standard, it was evident from the statutory scheme that "the Legislature ha[d] already considered the use of civil remedies to deter the sale of alcoholic beverages to those under the legal purchase age" and expressly provided the remedies it determined were appropriate, which did not include a private suit against the seller (*Sheehy*, 73 NY2d at 636). We have reached the same conclusion in several other recent cases where the statutes in question already contained substantial enforcement mechanisms, indicating that the legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted (*see e.g. Schlessinger v Valspar Corp.*, 21 NY3d 166 [2013] [General Business Law provision relating to termination of service contracts did not create private right of action]; *Matter of Stray from the Heart, Inc. v Department of Health & Mental Hygiene of the City of N.Y.*, 20 NY3d 946 [2012] [Animal Shelters and Sterilization Act did not create a private right of action permitting lawsuit by animal rescue organization]; *Metz v State of New York*, 20 NY3d 175 [2012] [Navigation Law provisions concerning inspection of public vessels did not create private right of action in favor of parties killed or injured when tour boat capsized]; *City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616 [2009] [public health statute precluding shipment of cigarettes into New York State did not create a private right of action permitting City to sue noncompliant cigarette retailers]; *McLean v City of New York*, 12 NY3d 194 [2009] [Social Services Law provision requiring registration of family day-care homes created no private right of action]; *Hammer v American Kennel Club*, 1 NY3d 294 [2003] [Agriculture and Markets Law statute precluding animal cruelty did not create a private right of action in favor of dog owner]).

In this case, the banks do not dispute that the first two *Sheehy* factors are satisfied—plaintiffs fall within the class the EIPA was intended to benefit and permitting judgment debtors to

bring plenary suits would arguably promote the legislative purpose of protecting exempt funds from improper restraint by encouraging compliance with the EIPA. However, as is usually true in implied private right of action cases, the controversy focuses on the third factor—whether an intent to create a private right of action would be consistent with, and can be inferred from, the legislative scheme.

Plaintiffs contend that a private right of action can fairly be implied by negative implication from the safe harbor clause relating to banks under the doctrine of *expressio unius est exclusio alterius*—the interpretive maxim that the inclusion of a particular thing in a statute implies an intent to exclude other things not included. Plaintiffs theorize that, by explicitly saying that banks cannot be liable for inadvertently failing to provide the forms required by CPLR 5222-a, the legislature signaled that financial institutions could be liable for all other failures to comply with the statute, whether inadvertent or otherwise.

As both District Courts concluded, this would be an unusual application of the *expressio unius* doctrine for it is typically used to limit the expansion of a right or exception—not as a basis for recognizing unexpressed rights by negative implication (*see e.g. Morales v County of Nassau*, 94 NY2d 218, 224-225 [1999]). If the legislature intended to create new liability for banks, it is odd that it would choose to do so by expressly stating that banks are *not liable* in particular circumstances while, at the same time, remaining silent as to any instances when banks *are liable* under the new statute. The banks point out that, when interpreting a statute, courts typically do not rely on legislative silence to infer significant alterations of existing law on the rationale that legislative bodies generally do not "hide elephants in mouseholes" (*see generally Whitman v American Trucking Assns., Inc.*, 531 US 457, 468 [2001] ["Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions"]). Put another way, if the legislature had intended to impose new liability on banks when they act as garnishees of the funds of judgment debtors, it would have said so in the statute.

Notably, the EIPA was modeled in many respects on Connecticut legislation that similarly requires financial institutions to forward notices of exemption and exemption claim forms to judgment debtors. Connecticut, however, explicitly imposes

liability on banks in its statute.[2] Connecticut also has a safe harbor clause preventing a bank from being held liable for an act or omission done in good faith or a bona fide error that occurred despite the bank's efforts to comply with the statute (Conn Gen Stat Ann § 52-367b [o]). But when New York adopted a procedure very similar to Connecticut's, the legislature did not duplicate the provision specifically authorizing judgment debtors to sue banks; instead, it adopted only the safe harbor clause excluding liability. The fact that the legislature chose not to include a liability provision—despite the Connecticut model—militates against judicial recognition, by implication, of the broad private right of action urged by plaintiffs. Indeed, the Connecticut statute's clear recognition of liability does not even authorize an action of the scope sought by plaintiffs in these actions—the Connecticut statutory language suggests that recovery is limited to reimbursement of exempt funds wrongly transferred and restitution of bank fees and related expenses improperly assessed (Conn Gen Stat Ann § 52-367b [n], *supra* n 2).

It is also significant that the EIPA explicitly provides that a judgment debtor can recover money damages arising from noncompliance with the EIPA from *judgment creditors*—the party charged with initiating the exemption notice process— lending significance to the legislature's failure to declare the same to be true relating to banks. In a section marked "Proceedings; bad faith claims," the statute declares that where "the court finds that the judgment creditor disputed the claim of exemption in bad faith . . . , the judgment debtor shall be awarded costs, reasonable attorney fees, *actual damages and an amount not to exceed one thousand dollars*" (CPLR 5222-a [g] [emphasis added]). While clearly expressing an intent to hold judgment creditors liable—even permitting the imposition of a

---

**2.** In a section entitled "Liability of financial institution," the Connecticut legislation provides:

> "If such financial institution pays exempt moneys from the account of the judgment debtor over to the serving officer contrary to the provisions of this section, such financial institution shall be liable in an action therefor to the judgment debtor for any exempt moneys so paid and such financial institution shall refund or waive any charges or fees by the financial institution, including, but not limited to, dishonored check fees, overdraft fees or minimum balance service charges and legal process fees, which were assessed as a result of such payment of exempt moneys" (Conn Gen Stat Ann § 52-367b [n]).

penalty in addition to actual damages—the legislature said nothing comparable in relation to financial institutions.

Plaintiffs point to CPLR 5222-a (h) which reads: "Nothing in this section shall in any way restrict the rights and remedies otherwise available to a judgment debtor, including but not limited to, rights to property exemptions under federal and state law," arguing that this means that there are no restrictions on their right to commence a plenary action against a bank for injunctive relief and money damages. But it appears from the language that the provision stands for the proposition that a debtor does not lose the right to claim a valid exemption by failing to timely return an exemption claim form. Thus, when the creditor later takes action to obtain delivery of the restrained funds through some means, such as a sheriff's execution of the levy or a turnover proceeding, the debtor remains free to assert that the funds are exempt, despite a prior failure to timely submit an exemption form. We do not view this language reserving the rights of debtors to pursue exemptions as creating a new right to bring plenary actions against banks.

Nor would recognition of such a right be compatible with the comprehensive enforcement mechanisms the legislature included elsewhere in CPLR article 52. For one thing, the enforcement provisions contain detailed venue provisions that govern the court in which relief may be sought (CPLR 5221). Permitting a party to seek relief for violation of the statute in a plenary action in some other court would essentially read the venue provisions out of the statute. Moreover, the statutory scheme provides several mechanisms for enforcement that can be used to obtain significant relief.

Given that the primary purpose of article 52 is to facilitate the enforcement of judgments, it provides procedures that can be invoked by judgment creditors—the delivery or turnover proceedings described in CPLR 5225 and 5227 chief among them. But the article also contains general provisions that permit "any interested person"—including a judgment debtor—to secure remedies for wrongs arising under the statutory scheme. Under CPLR 5239, "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt" and the court may permit "any interested person to intervene in the proceeding." As a result of a CPLR 5239 proceeding, "[t]he

court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded." CPLR 5240 permits a court "at any time, on its own initiative or the motion of any interested person" to issue an order "denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure"—and therefore grants the court substantial authority to order equitable relief. The flexible nature of such a proceeding is evident from the EIPA itself, which directs that a judgment creditor who objects to an exemption claim must, in expedited fashion, initiate a CPLR 5240 proceeding to resolve the dispute (see CPLR 5222-a [d]). The fact that significant enforcement mechanisms are built into CPLR article 52—and, indeed, predated the EIPA—militates against recognition through implication of a new type of claim against banks falling outside the statutory scheme.

In somewhat contradictory fashion, plaintiffs assert both that CPLR article 52 does not provide them a means to seek redress in one of its special proceedings—hence the need to recognize a plenary action for injunctive relief and money damages—and also that they already had a right to sue a bank for a violation of article 52 before enactment of the EIPA and that right was not extinguished by the legislation. As to the former, nothing prevents a party injured in the manner alleged by plaintiffs from seeking redress against a bank in a CPLR 5239 or 5240 proceeding. A judgment debtor is certainly an "interested person" and CPLR 5239 permits such a party to bring a proceeding against any "other person with whom a dispute exists to determine rights in the property."[3] Thus, if a judgment debtor believes that a bank has restrained assets in error in violation of the EIPA—meaning there is a controversy between the bank

3. Nothing in the statute suggests that CPLR 5239 was intended to be restricted to priority disputes between competing judgment creditors, although such controversies are often resolved in that forum. Plaintiffs mistakenly rely on a statement of Professor David Siegel indicating that judgment creditors competing over the same property of the debtor can either iron out their differences via a CPLR 5239 proceeding or a plenary action (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C5239:1 at 469 [1997]). Parties seeking to collect a debt can, of course, bring a declaratory judgment action to resolve priority issues. But that is not because a private right of action can be implied under CPLR 5239, nor does it follow that tort-like relief can be obtained such as the damages plaintiffs seek here. Rather, the priority rights of creditors are derived from their underlying dealings with the judgment debtor (contractual or otherwise) and the nature and timing of the judgments they seek to enforce. Professor Siegel's comment

and the account holder over access or "rights" in the deposited funds—he or she can obtain a civil remedy, such as the release of any money unlawfully restrained, an injunction barring transfer of exempt property to the sheriff or judgment creditor, or reimbursement of any bank fees improperly charged. Comparable relief would be available under CPLR 5240, even after the assets have been transferred to the judgment creditor; in that event, the judgment creditor could be joined as a party and the court could reverse the transfer by issuing an order "denying" the execution and directing restitution by the judgment creditor.[4] Provided relief is sought in the appropriate forum in a timely manner, the judgment creditor is not entitled to retain exempt funds secured in error. If banks make mistakes, the special proceedings in CPLR article 52 afford an avenue for relief.

But recognition of new liability for banks of the type proposed by plaintiffs would be incompatible with the legislative scheme, which recognizes the bank's limited role as garnishee. When a judgment creditor has properly imposed a restraint on a bank account, the bank has no choice but to freeze the assets. Whether issued by a court or an attorney acting as an officer of the court, a restraining notice is an injunction and "disobedience is punishable as a contempt of court" (CPLR 5222 [a]; *see generally* 5251). Yet the EIPA now imposes significant obligations on banks by requiring them to forward the exemption and claim notices to the judgment debtor and to participate in the processing of exemption claims.

■ Considering the statutory scheme overall, it appears that the legislature intended to use banks as a conduit for information so that exemption rights would be timely communicated to judgment debtors but did not intend this role to subject banks to a new type of liability. The point of the legislation was to help debtors notify banks of the presence of exempt funds in their accounts in order to prevent those funds from being restrained in the first instance—not to create yet another opportunity for

---

therefore has no bearing on the issue we confront here—whether a duty imposed by statute has given rise to a private right of action.

4. There is no concrete temporal limitation on initiation of a CPLR 5240 proceeding, which is largely equitable in nature, although such relief should be pursued within a reasonable time after the injury is incurred; where tangible or real property is at issue, post-execution relief will generally be unavailable once third parties obtain an interest in the property, thereby introducing countervailing equitable concerns (*see generally Guardian Loan Co. v Early*, 47 NY2d 515 [1979]).

litigation on the back end after an improper restraint was imposed. There is no indication that the legislature adopted the EIPA because it believed that CPLR article 52 failed to supply adequate means for a judgment debtor to seek judicial recourse during the enforcement process (thereby necessitating a new avenue in the form of a plenary private right of action against a bank)—the intent was to remove the need for litigation altogether. If a lawsuit remains necessary due to a bank's noncompliance with the EIPA, the existing proceedings in CPLR article 52 are adequate to afford a judgment debtor appropriate relief. The summary proceedings have the advantage of being swift and without procedural complexity—there is no basis to suppose that the legislature expected that injured judgment debtors would commence complicated and lengthy plenary proceedings to vindicate their rights, such as the federal court actions plaintiffs brought here.

As for plaintiffs' other argument—that they already possessed a right to bring a plenary action against a bank for money damages before the new legislation and the EIPA did not eliminate that right—we are unpersuaded. To be sure, account holders have contractual relationships with their depository banks and may therefore bring a breach of contract action arising from a violation of any duty owed under the contract, depending on the terms of their agreements. And we certainly do not rule out the possibility that other statutes governing debt collection might create non-contractual duties on the part of financial institutions that, if breached, could give rise to a private right of action. But plaintiffs have not cited any persuasive pre-EIPA precedent in which a New York court recognized an account holder's right to sue a depository bank for a violation of CPLR article 52 outside the special proceedings discussed above.

Plaintiffs' reliance on *Aspen Indus. v Marine Midland Bank* (52 NY2d 575 [1981]) for the contrary view is misplaced. In *Aspen*, a judgment creditor brought a CPLR 5227 turnover proceeding against a bank arising from the bank's alleged willful failure to comply with a restraining notice. The judgment creditor asserted that, in violation of the restraint, the bank had permitted the judgment debtor to continue to access a restrained account and to deposit funds, then applied the new deposits to a debt the account holder owed the bank—fulfilling its business interests at the expense of the judgment creditor. In addressing that dispute, we observed: "violation of the restraining notice by the party served is punishable by contempt (CPLR

5222, subd [a]; 5251) and subjects the garnishee to personal liability in a separate plenary action or special proceeding under CPLR article 52 brought by the aggrieved judgment creditor" (*Aspen*, 52 NY2d at 580).

Plaintiffs seize on the dictum referencing "a separate plenary action" to argue that a judgment debtor should be able to bring a plenary action for money damages against a bank for a violation of the EIPA. However, assuming the reference to be good law, any right to bring a plenary action in the *Aspen* context arises from the fact that the legislature has declared this type of noncompliance with a restraining notice to constitute contempt (*see* CPLR 5222 [a]; 5251); the dictum is consistent with the general proposition that a party injured as a consequence of a contempt of court can sue to secure money damages (*see* Judiciary Law § 773).[5] The fact that a judgment creditor may be able to bring a plenary action to punish a bank's contemptuous failure to honor a restraining notice does not establish that noncompliance with other technical aspects of CPLR article 52 can give rise to a plenary action for money damages when errors of that type have not been declared by the legislature to constitute contempt—which is, of course, the case with the EIPA.

We agree with the District Courts that a private right to bring a plenary action for injunctive relief and money damages cannot be implied from the EIPA—and we therefore answer the first certified question in the negative. As for the second certified question, a judgment debtor can secure relief from a bank arising from a violation of the EIPA in a CPLR article 52 special proceeding as we have explained. And our determination that the legislation created no private right of action compels the conclusion that the statutory mechanisms for relief are exclusive. Banks had no obligation under the common law to forward notices of exemption and exemption claim forms to judgment debtors. It therefore follows that any right debtors have to enforce that obligation, among others imposed under

---

**5.** The other New York cases cited by plaintiffs in this regard similarly involved instances where a bank violated a restraining notice by failing to freeze an account (*see Nardone v Long Is. Trust Co.*, 40 AD2d 697 [2d Dept 1972]; *Matter of Sumitomo Shoji New York v Chemical Bank N.Y. Trust Co.*, 47 Misc 2d 746 [Sup Ct, NY County 1965], *affd* 25 AD2d 499 [1st Dept 1966]; *Jackson v TD Bank*, 28 Misc 3d 1222[A], 2010 NY Slip Op 51431[U] [Civ Ct, Kings County 2010]; *Mazzuka v Bank of N. Am.*, 53 Misc 2d 1053 [Civ Ct, Queens County 1967]; *see also Goldberg v Active Fire Sprinkler Corp.*, 194 AD2d 765 [2d Dept 1993] [noncompliance with income execution]).

CPLR 5222-a, arises from the statute and, since the EIPA does not give rise to a private right of action, the only relief available is that provided in CPLR article 52 (*see generally Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236 [2009]).

Accordingly, the certified questions should be answered in accordance with this opinion.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.