# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 81
Dr. Robert D. Haar, M.D.,
    Appellant,
     v.
Nationwide Mutual Fire Insurance
Company,
    Respondent,
et al.,
    Defendants.

Gregory Zimmer, for appellant.
Ralph J. Carter, for respondent.
New York Insurance Association, Inc., et al., Coalition Against Insurance Fraud et al.,
amici curiae.

STEIN, J.:

The United States Court of Appeals for the Second Circuit has certified the following question to this Court: "Does New York Public Health Law [§] 230 (11) (b) create a private right of action for bad-faith and malicious reporting to the Office of

- 1 -

Professional Medical Conduct?" (918 F3d 231, 235 [2d Cir 2019]).  Because there is no indication that the legislature intended to create a private right of action in section 230 (11) (b), we answer the certified question in the negative.

Plaintiff, an orthopedic surgeon licensed to practice medicine in New York, treated four patients who were injured in automobile accidents and insured by defendant Nationwide Mutual Fire Insurance Company.  Plaintiff submitted claims to defendant in connection with each patient, and defendant either fully or partially denied each claim. Defendant thereafter filed complaints with the Office of Professional Medical Conduct (OPMC) alleging insurance fraud.  After an investigation, OPMC declined to impose any discipline against plaintiff.  Plaintiff then commenced this action, asserting that defendant's complaints to OPMC lacked a good-faith basis in violation of Public Health Law § 230 (11) (b), and interposed a separate cause of action for defamation.

Defendant removed the action to federal court and moved to dismiss the complaint, arguing that Public Health Law § 230 (11) (b) did not expressly or impliedly provide plaintiff with a right of action and that the defamation claim was time-barred.  The United States District Court for the Southern District of New York granted defendant's motion to the extent of dismissing the cause of action premised on section 230 (11) (b).  Relying on its prior decision in Lesesne v Brimecome (918 F Supp 2d 221 [SD NY 2013]), the District Court opined that, if presented with the issue of whether Public Health Law § 230 (11) (b) implies a private right of action, this Court would hold that it does not.  The District Court subsequently concluded that plaintiff's defamation cause of action was time-barred.

Plaintiff appealed. Recognizing an Appellate Division split regarding whether Public Health Law § 230 (11) (b) implies a private right of action (compare Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 768, 771-772 [2d Dept 2017]), with Foong v Empire Blue Cross & Blue Shield, 305 AD2d 330, 330 [1st Dept 2003]), the Second Circuit certified the above question, which this Court accepted (32 NY3d 1211 [2019]).

Public Health Law § 230 governs professional medical misconduct proceedings. Section 230 (11) sets forth the procedures for reporting "information . . . which reasonably appears to show that a licensee is guilty of professional misconduct," as defined by the Education Law (Public Health Law § 230 [11] [a]). To that end, the statute requires that certain organizations and licensees report suspected medical misconduct, although the statute also permits "any other person" to submit complaints to OPMC (Public Health Law § 230 [11] [a]). The provision at issue in this case states that "[a]ny person, organization, institution, insurance company, osteopathic or medical society who reports or provides information to [OPMC] in good faith, and without malice shall not be subject to an action for civil damages or other relief as the result of such report" (Public Health Law § 230 [11] [b]).

As plaintiff concedes, Public Health Law § 230 (11) (b) does not expressly create a cause of action authorizing licensees to commence civil litigation against a complainant that files an allegedly bad-faith and/or malicious report with OPMC (compare Public Health Law § 230 [10] [j] [creating an express right to commence a CPLR article 78 proceeding in certain instances]). Consequently, "recovery may be had . . . only if a

legislative intent to create such a right of action is fairly implied in the statutory provision[] and [its] legislative history" (Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 211 [1990] [internal quotation marks omitted]; see Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; see also Cruz v TD Bank, N.A., 22 NY3d 61, 70 [2013]; Hammer v American Kennel Club, 1 NY3d 294, 299 [2003]; Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 38 [1999]; Carrier v Salvation Army, 88 NY2d 298, 302 [1996]).  Stated differently, "[a]bsent explicit legislative direction, . . . it is for the courts to determine, in light of [the statutory] provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which legislative familiarity is presumed, what the [l]egislature intended" (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983]).

We have consistently identified three "essential factors" to be considered in determining whether a private right of action can be fairly implied from the statutory text and legislative history:  "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (Sheehy, 73 NY2d at 633-634; see e.g. Cruz, 22 NY3d at 70; Carrier, 88 NY2d at 302).  Critically, all three factors must be satisfied before an implied private right of action will be recognized (see Pelaez v Seide, 2 NY3d 186, 200 [2004]).  Applying these factors here, we conclude that the legislature did not intend to create a right of action under Public Health Law § 230 (11) (b).

Beginning with the first factor, plaintiff failed to demonstrate that he falls within the class the legislature intended to benefit by enacting Public Health Law § 230 (11) (b). Section 230 was first adopted, without subdivision (11), to facilitate resolution of medical disciplinary proceedings (see Sponsor's Mem, Bill Jacket, L 1975, ch 109 at 6). Subdivision (11) was subsequently added and amended, providing "[a]ny person, organization, institution, insurance company, osteopathic or medical society" with immunity from civil litigation for making good-faith reports to OPMC (Public Health Law § 230 [11] [b]).  On the face of this provision, there is no indication that the legislature intended to benefit medical professionals accused of misconduct, as opposed to persons or entities that report suspected medical misconduct.

Even if there were any ambiguity in the statutory text with respect to who the statute was intended to benefit, the legislative history of section 230 (11) (b) could not be much clearer on this point.  The Sponsor's Memorandum in support of the original version of section 230 (11) (b) observed that "[t]he American Medical Association's ad hoc Committee on Medical Discipline ha[d] reported that one of the major problems for state regulating boards [was] the reluctance of hospitals, medical societies, and physicians to provide information concerning errant doctors, because of a fear of litigation" (Sponsor's Mem, Bill Jacket, L 1977, ch 773 at 6).  In order "to alleviate that concern and to increase the reports of unprofessional conduct to [OPMC]," section 230 (11) (b) was codified specifically to afford "immunity from civil suit to all individuals, societies, and institutions who provide information to [OPMC] in good faith" (id. [emphasis added]).  In that regard, the Sponsor's Memorandum further observed that, "[w]hen Arizona enacted similar

legislation, the number of complaints reported to [its] board quadrupled, and disciplinary action became more effective." Thus, the pertinent legislative history makes clear that section 230 (11) (b) was not added to the Public Health Law to protect physicians, such as plaintiff, accused of misconduct. Rather, that provision was intended to protect the public from medical misconduct by encouraging reporting.

Nevertheless, plaintiff argues that, given the numerous procedural protections afforded to doctors who are accused of misconduct, Public Health Law § 230 was generally intended for their benefit. To be sure, as the legislature has amended section 230 over the past 45 years, it has continuously grappled with how to balance an effective disciplinary system for the medical profession with procedural due process. However, the fact that the legislature has amended section 230 to provide procedural safeguards does not mean that section 230 (11) (b), in particular, was designed to benefit medical professionals accused of misconduct. A degree of procedural due process is afforded in all administrative proceedings; therefore, to accept plaintiff's argument essentially would be to conclude that, in all administrative law contexts, the very parties or entities being regulated are, as a matter of course, the intended beneficiaries of the statutes that regulate them. Inasmuch as the text and legislative history of section 230 (11) (b) establish that, in order to encourage increased reporting of unprofessional conduct, the legislature specifically sought to <u>shield complainants</u> from liability by imparting a limited immunity from civil actions commenced by regulated entities, plaintiff's focus on the procedural due process protections generally accorded to licensees subject to medical disciplinary proceedings is misplaced.

Simply put, there is no indication that physicians accused of misconduct were the intended beneficiaries of section 230 (11) (b).  Thus, "the first, and perhaps most easily satisfied, prong" for determining whether a statute implies a private right of action is not satisfied in this case (Sheehy, 73 NY2d at 634).

Because plaintiff fails the first prong of our well-settled analysis, we must conclude—regardless of our consideration of the other two factors—that there is no implied right of action under Public Health Law § 230 (11) (b) (see Pelaez, 2 NY3d at 200). In any event, plaintiff's arguments with respect to the remaining two prongs fare no better than the first.  Regarding the second factor—"whether recognition of a private right of action would promote the legislative purpose" of the statute (Sheehy, 73 NY2d at 633)— plaintiff argues that the legislature's intent in enacting Public Health Law § 230 (11) (b) was, in part, to discourage bad-faith reporting.  However, this position is belied by both the text of the statute and the legislative history discussed above, which demonstrate that the legislature's goal was to increase reporting—nothing in either the text or legislative history evinces legislative concern that OPMC was receiving too many reports.  Nor does plaintiff point to anything that would suggest that recognizing a private right of action would discourage only bad-faith reporting.  Thus, were this Court to recognize an implied right of action, we would likely undermine the statutory purpose of section 230 (11) (b) by increasing reporters' exposure to liability, thereby potentially creating a spill-over or chilling effect that could discourage good-faith reporting.

Essentially, plaintiff seeks to imply a private right of action based on negative implication; he argues that the "good faith" language in Public Health Law § 230 (11) (b)

implicitly recognizes that bad-faith reporting is actionable. However, this Court has already rejected a similar argument in <u>Cruz v TD Bank</u>, in which we determined that there was no private right of action in favor of the plaintiffs—judgment debtors whose bank accounts were frozen—against the financial institution that failed to provide the plaintiffs with certain forms required by statute (22 NY3d at 65, 72). There, the plaintiffs posited that a provision in the relevant statute "explicitly saying that banks cannot be liable for inadvertently failing to provide the[se] forms . . . signaled that financial institutions could be liable for all other failures to comply with the statute, whether inadvertent or otherwise" (<u>id.</u> at 72). We declined to infer a private right of action, reasoning that, "[i]f the legislature intended to create new liability for banks, it is odd that it would choose to do so by expressly stating that banks are <u>not liable</u> in particular circumstances while, at the same time, remaining silent as to any instances when banks <u>are liable</u> under the new statute" (<u>id.</u>). We observed that, "when interpreting a statute, courts typically do not rely on legislative silence to infer significant alterations of existing law on the rationale that legislative bodies generally do not 'hide elephants in mouseholes'" (<u>id.</u>, quoting <u>Whitman v American Trucking Assns., Inc.</u>, 531 US 457, 468 [2001]). We similarly reject plaintiff's argument here that the language of Public Health Law § 230 (11) (b) creates an implied right of action by negative implication.

Moreover, as the parties agree, common law remedies exist, thereby undercutting plaintiff's argument that there is no other method of deterring bad-faith reporting. For example, although the issue is not before us, the parties are in agreement that the very same allegations that could support a cause of action under section 230 (11) (b), if one existed,

might also support a defamation claim when the identity of the claimant is known.  To the extent the statutory text and legislative history of section 230 (11) (b) are silent regarding a concern over bad-faith reporting, we can infer that the legislature was satisfied with existing common-law remedies, "with which legislative familiarity [must be] presumed" (Burns Jackson Miller Summit & Spitzer, 59 NY2d at 325).

The third and final factor of our analysis—"whether creation of such a right would be consistent with the legislative scheme" (Sheehy, 73 NY2d at 633)—also militates against recognition of an implied right of action.  As highlighted above, the legislature enacted Public Health Law § 230 (11) to encourage robust reporting, and the implied right of action for which plaintiff advocates would diminish the effectiveness of this statutory scheme.  We further observe that, just as Public Health Law § 230 (11) (a) mandates that certain organizations and licensees report suspected medical misconduct to OPMC, the Insurance Law also requires insurance companies to report suspected insurance fraud to OPMC (see Insurance Law § 5108 [c]; 11 NYCRR 68.8).  Recognizing an implied right of action in section 230 (11) (b) could discourage mandatory reporters from complying with their statutory duties out of concern that even a good-faith report could spawn litigation under that section.  This result would be antithetical to the legislature's clear objective.  Additionally, Public Health Law § 230 (11) (a) contains a confidentiality provision that professional misconduct reports to OPMC "shall remain confidential and shall not be admitted into evidence in any . . . judicial proceeding."  This rule was designed to further encourage "those who were alleged victims of professional misconduct on the part of a physician to come forward without fear of disclosure so that appropriate investigations

might be pursued" (Matter of Barnette v Sobol, 83 NY2d 333, 338 [1994]).  Although licensees may in some cases, as here, be aware of or discern the complainant's identity, the confidentiality provision generally operates to prevent licensees from discovering the identity of complainants and, consequently, pressing any civil claims against them (cf. Matter of Barnette, 83 NY2d at 341 [holding that section 230 (11) (a) did not bar access to written complaints for cross-examination purposes where the licensee "face(d) charges, some of which were 15 to 20 years old, and the authors of the complaints ha(d) testified and (were) already known to the physician"]).  That the legislature did not contemplate broad access to the identity of reporters is an additional indication that section 230 (11) (b) was not intended to create a private right of action.

In sum, Public Health Law § 230 (11) (b) was not enacted for the benefit of persons similarly situated to plaintiff, and a private right of action is inconsistent with the legislative purpose and broader statutory scheme.  Therefore, the statutory text and legislative history do not imply a legislative intent to create a right of action under section 230 (11) (b). Accordingly, the Second Circuit's certified question should be answered in the negative.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by the Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative. Opinion by Judge Stein. Chief Judge DiFiore and Judges Rivera, Fahey, Wilson and Feinman concur. Judge Garcia took no part.

Decided November 21, 2019