OPINION OF THE COURT
Angiolillo, J.E
This appeal raises the issue of whether a judgment creditor may recover damages from the State of New York when a county clerk’s error in docketing a judgment allowed the judgment debtor to convey real property free of the judgment lien, frustrating the judgment creditor’s ability to execute on the *140 judgment. We conclude that a private right of action by a judgment creditor against the State may not be fairly implied by the statutes governing the docketing of judgments. Accordingly, the Court of Claims properly granted the State’s motion for summary judgment dismissing the judgment creditor’s claim.
The instant claim arises from the efforts of the claimant, Flagstar Bank, FSB (hereinafter Flagstar), to enforce a judgment in its favor against Caribbean Mortgage Corp. and the president of Caribbean Mortgage Corp., Udit Meeto, pursuant to a settlement agreement in an action filed in Federal District Court (hereinafter the federal action). A final judgment dated June 26, 2006 (hereinafter the federal judgment) was entered on consent of the parties in favor of Flagstar and “against defendants Caribbean Mortgage Corp. and Udit Meeto, jointly and severally, in the principal sum of $2,150,925.47.” The consent portion of the federal judgment was signed by “Caribbean Mortgage Corp. By Udit Meeto, Its President” and by “Udit Meeto, Individually.”
Flagstar submitted a certified copy of the abstract of judgment, together with a copy of the federal judgment, to the Queens County Clerk’s Office (hereinafter the County Clerk) for docketing. The abstract of judgment listed the parties against whom the federal judgment had been entered as “Caribbean Mortgage Corp. and Udit Meetoo [sic].” It is undisputed that, on November 14, 2006, the County Clerk, in docketing the federal judgment, erroneously identified Udit Meeto as a “debtor/corporation” rather than a natural person. As a result of this error, in January and February 2008, Meeto was able to convey two parcels of his real property free and clear of Flag-star’s judgment lien. Shortly after conveying these properties, Meeto ceased making payments to Flagstar on the federal judgment, leaving an unpaid principal balance of $938,774. In June 2008, Flagstar learned of Meeto’s conveyances and notified the County Clerk. On June 16, 2008, the County Clerk corrected the docketing error to reflect that the federal judgment was entered against Udit Meeto, a natural person.
Shortly thereafter, Flagstar commenced actions in the Supreme Court, Queens County, to set aside the conveyances of the two parcels of real property. In one of the actions, Flagstar obtained a default judgment against Meeto and the purchaser, but in the other action, the purchaser of the property contested the action. On March 30, 2009, Flagstar filed the instant claim against the State of New York to recover damages for the al *141 leged negligence of the County Clerk in failing properly to docket the federal judgment, asserting that this alleged negligence resulted in Flagstar’s loss of its judgment liens against the two subject parcels of real property. In its answer, the State denied that it negligently breached a duty of care, and asserted affirmative defenses, including governmental function immunity.
The State moved for summary judgment dismissing the claim, and Flagstar cross-moved for summary judgment on the issue of liability. In support of its motion, the State submitted exhibits, including a transcript of the deposition testimony of the County Clerk’s data entry clerk who had docketed the federal judgment. The data entry clerk testified that, based on the description of the parties set forth on the abstract of the federal judgment, it was not clear whether Udit Meeto was a person or a corporation. She searched the database, and upon finding no previous entries of that name in the system, entered Udit Meeto as a corporation. Although she had no independent recollection, she assumed that she did not look at the last page of the federal judgment that was attached to the abstract, where Meeto was identified as a person.
The State contended that the claim must be dismissed because the County Clerk was under no statutory obligation to look beyond the face of the abstract of the federal judgment to determine Meeto’s status, citing CPLR 5018 (b), which requires a county clerk to docket a judgment of a federal court upon the filing of a “transcript” of such judgment. The State further contended that, in any event, the data entry clerk’s determination as to whether Meeto was a corporation or an individual was not a purely ministerial act, but required the exercise of discretion and was, therefore, protected by sovereign immunity. In opposition to the motion and in support of its cross motion, Flagstar contended that the County Clerk was negligent as a matter of law for failing to comply with CPLR 5018 (c) (1), which requires docketing of any judgment “under the surname of the judgment debtor,” and that the State was not shielded from liability by the doctrine of sovereign immunity, citing National Westminster Bank, USA v State of New York (155 AD2d 261 [1989], affd 76 NY2d 507 [1990]).
The Court of Claims granted the State’s motion and denied Flagstar’s cross motion, rejecting Flagstar’s contention that National Westminster Bank controlled, and holding that the State did not owe Flagstar a special duty of care.
*142 In National Westminster Bank, the State conceded that the Bronx County Clerk negligently failed to timely docket the claimant’s Nassau County judgment, thus allowing the judgment debtor to convey his parcel of land in Bronx County free of the claimant’s encumbrance, and frustrating the claimant’s ability to execute on the judgment. The Court of Claims granted the claimant’s motion for summary judgment on the claim. On appeal to the Appellate Division, First Department, the State contended that, because the Bronx County Clerk was a local official, the State should not be held liable for the Clerk’s negligence and, alternatively, that sovereign immunity protected the State from liability for the County Clerk’s negligence even if he were a state official. The First Department affirmed the order awarding summary judgment in favor of the claimant on the issue of liability, rejecting both of the State’s arguments:
“The docketing of a judgment is fundamentally a court act and arises from the County Clerk’s role as Clerk of the Supreme Court. When the Clerk acts in his [or her] role as Clerk of the Supreme Court, he [or she] acts as a State officer. The Clerk has a duty to properly and timely docket judgments, and the act[ ] of recording the judgment on the record is not discretionary. Therefore, the doctrine of sovereign immunity does not obtain to insulate the State from liability for the Clerk’s negligent failure with respect to recording judgments” (National Westminster Bank, USA v State of New York, 155 AD2d at 261-262 [citations omitted and emphasis added]).
The State appealed to the Court of Appeals, raising only its primary argument that the County Clerk was not a state officer. The Court of Appeals rejected that argument and affirmed the decision and order of the First Department holding the State liable (see National Westminster Bank, USA v State of New York, 76 NY2d at 508-509). Consequently, the Court of Appeals did not rule on the State’s alternative argument, and did not comment on the First Department’s conclusion that the act of docketing a judgment “is not discretionary” (National Westminster Bank, USA v State of New York, 155 AD2d at 262) and that, therefore, it is a ministerial act for which the doctrine of sovereign immunity did not insulate the State from liability.
The First Department determined the National Westminster Bank appeal in 1989 (see also Lapidus v State of New York, 57 AD3d 83, 91 [2008]). In 2009, the Court of Appeals directly *143 addressed and clarified the “admittedly confusing language” in its opinions concerning the State’s duty of care in situations involving the negligent performance of ministerial acts (McLean v City of New York, 12 NY3d 194, 203 [2009]). The Court held that “[government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general” (id. at 203; see Valdez v City of New York, 18 NY3d 69, 78 [2011]; Dinardo v City of New York, 13 NY3d 872 [2009]). “[Claimants must first establish the existence of a special duty owed to them by the State before it becomes necessary to address whether the State can rely upon the defense of governmental immunity” (Metz v State of New York, 20 NY3d 175, 179 [2012]; see Valdez v City of New York, 18 NY3d at 80). Thus, if it is determined that the State owes no special duty of care to the claimant, then the State has not breached a duty of care, and it becomes unnecessary to determine whether the defense of sovereign immunity applies, or whether the specific act of the public official is classified as discretionary or ministerial.
A “special duty” is “a duty to exercise reasonable care toward the plaintiff,” and is “born of a special relationship between the plaintiff and the governmental entity” (Pelaez v Seide, 2 NY3d 186, 189, 198-199 [2004]; see McLean v City of New York, 12 NY3d at 199).
“A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation” (Pelaez v Seide, 2 NY3d at 199-200; see McLean v City of New York, 12 NY3d at 199).
On appeal, Flagstar relies on the first method set forth in Pelaez, contending that a special relationship between it and the State arose from a “statutory duty.” Nonetheless, “[a] statutory command . . . does not necessarily carry with it a right of private enforcement by means of tort litigation” (Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 38 [1999]).
“To form a special relationship through breach of a *144 statutory duty, the governing statute must authorize a private right of action. One may be fairly implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme. If one of these prerequisites is lacking, the claim will fail” (Pelaez v Seide, 2 NY3d at 200 [citation omitted]; see Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]).
Here, it is undisputed that the statutes governing the docketing of judgments do not expressly provide for a private right of action to recover damages for the negligence of a County Clerk. CPLR 5018 (b) provides that
“[a] transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.”
CPLR 5203 (a) provides that
“[n]o transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor . . . from the time of the docketing of the judgment with the clerk of the county in which the property is located until ten years after filing of the judgment-roll.”
These two statutes provide that a judgment, once docketed, becomes a lien on the real property of the judgment debtor in the county of docketing (see Cadle Co. v Calcador, 85 AD3d 700, 702 [2011]; Matter of Accounts Retrievable Sys., LLC v Conway, 83 AD3d 1052, 1053 [2011]). For these statutes to imply a private right of action, all three prerequisites of Pelaez must be met. These prerequisites have not been met, and, thus, a private right of action may not be fairly implied by these statutes.
To satisfy the first and second prerequisites, the claimant must be “one of the class for whose particular benefit the statute was enacted,” and it must be shown that “recognition of a private right of action would promote the legislative purpose” of the governing statutes (Pelaez v Seide, 2 NY3d at 200 *145 [emphasis added]). A determination that these two prerequisites are met here would require us to conclude that the class for whose particular benefit the governing statutes were enacted comprises judgment creditors, and that the legislative purpose of the statutory scheme was to make judgment creditors whole for their losses. This is simply not the case.
The integrity of the court system generally is preserved through mechanisms for the enforcement of judgments. “CPLR article 52 is concerned with the fundamental problem of enforcing money judgments”; its enforcement mechanisms “are absolutely essential to insure the integrity of our courts’ judgments and without such procedures judicial redress would be frequently no more than an empty gesture” (National Bank of N. Am. v International Bhd. of Elec. Workers Local No. 3, Pension & Vacation Funds, 69 AD2d 679, 683 [1979]). Thus, the Court of Appeals recently recognized that “the primary purpose of [CPLR] article 52 is to facilitate the enforcement of judgments” (Cruz v TD Bank, N.A., 22 NY3d 61, 74 [2013]). However, this general legislative purpose of CPLR article 52 does not preclude a finding that certain provisions within the article were enacted for the particular benefit of a class other than judgment creditors or for a legislative purpose more specific than the overall purpose of facilitating the enforcement of judgments.
For example, in Cruz, the Court recognized, as conceded by the parties in that case, that the Exempt Income Protection Act of 2008, which is codified in various provisions throughout CPLR article 52, was enacted for the particular benefit of judgment debtors and for the “legislative purpose of protecting exempt funds from improper restraint” (Cruz v TD Bank, N.A., 22 NY3d at 72).
Here, while judgment creditors undoubtedly stand to benefit from CPLR 5018 and 5203, they do not constitute the sole class to benefit from the docketing of judgment liens. The recording of judgment liens is of particular benefit to prospective purchasers of real property belonging to judgment debtors. “The docketing of the judgment is especially for the purpose of giving notice of the lien to third parties dealing with the land of the judgment debtor” (Bernstein v Schoenfeld, 37 Misc 610, 612 [1902], affd 81 App Div 171 [1903]; see We Buy Now, LLC v Cadlerock Joint Venture, LP, 46 AD3d 549, 549-550 [2007]). In the analogous context of the recording of mortgage interests, the recognized statutory purpose is to protect bona fide purchasers:
*146 “Article 9 of the Real Property Law provides that a properly recorded mortgage is superior to subsequently recorded mortgages (see Real Property Law §§ 290-291). The statute was enacted to protect purchasers with an interest in real property without record notice of prior encumbrances and to create a public record to meet this end. Likewise, liens are similarly recorded (see CPLR 5203)” (Gletzer v Harris, 12 NY3d 468, 473 [2009] [citation omitted and emphasis added]).
Thus, judgment creditors do not constitute the sole class for whose “particular benefit” the judgment docketing provisions were enacted.
Even if the subject statutory provisions were enacted for the particular benefit of judgment creditors, thus satisfying the first Pelaez prerequisite, it does not follow that the second prerequisite is satisfied. The legislative purpose was consistent with the general purpose of CPLR article 52 “to facilitate the enforcement of judgments” (Cruz v TD Bank, N.A., 22 NY3d at 74) not a specific purpose to make judgment creditors whole. The statutory scheme for the docketing of judgments manifestly facilitates the determination of disputes between private parties, and is not indicative of a legislative intent to make judgment creditors whole by means beyond their disputes with judgment debtors. As noted, an intent to benefit innocent third-party purchasers of the judgment debtor’s property is also evident. Since a judgment creditor is in the best position to ensure the proper recording of the judgment lien, a bona fide purchaser of a judgment debtor’s property will prevail over a judgment creditor who has failed to ensure the docketing of the lien under the correct name.
“ ‘A judgment is not docketed against any particular property, but solely against a name, and if that name is incorrectly set forth, a purchaser in good faith should not be the one to suffer; but rather the creditor, who should see to it that the docketing is in the correct name of the debtor, if it is to be notice to subsequent purchasers’ ” (We Buy Now, LLC v Cadlerock Joint Venture, LP, 46 AD3d 549, 549 [2007], quoting Grygorewicz v Domestic & Foreign Discount Corp., 179 Misc 1017, 1018-1019 [1943]).
After a judgment is submitted for docketing, the judgment creditor is in the best position to check on the accuracy of the *147 public record. To recognize an implied private right of action here would shift the responsibility for losses occasioned by improper docketing from the judgment creditor to the County Clerk. This shift is inconsistent with the judgment creditor’s obligation under the statutory scheme, in the first instance, to submit the judgment in proper form for docketing to the County Clerk, and inconsistent with the superior knowledge of the judgment creditor over that of the County Clerk and innocent third-party purchasers as to the proper identity of the judgment debtor. Manifestly, since one of the purposes of the legislative scheme is to benefit third-party bona fide purchasers of the judgment debtor’s property, Flagstar failed to satisfy the first and second prerequisites for the recognition of an implied right of action against the State.
In any event, even if the first two prerequisites have been met, the third one has not. “[T]he most critical inquiry in determining whether to recognize a private cause of action where one is not expressly provided is whether such action would be consistent with the over-all legislative scheme” (Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 212 [1990]; see Mark G. v Sobol, 93 NY2d 710, 720 [1999]). A private right of action for a new type of claim should not be judicially recognized by implication “where the statutes in question already contain[ ] substantial enforcement mechanisms, indicating that the legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted” (Cruz v TD Bank, N.A., 22 NY3d at 71; see Mark G. v Sabol, 93 NY2d at 720; Sheehy v Big Flats Community Day, 73 NY2d at 634-635).
The judgment lien created by CPLR 5018 and 5203 is simply one weapon in the “arsenal of enforcement mechanisms under CPLR article 52” provided to judgment creditors (Aspen Indus. v Marine Midland Bank, 52 NY2d 575, 582 [1981]). The panoply of enforcement mechanisms includes, inter alia, execution against a judgment debtor’s real or personal property {see CPLR 5202, 5230), income execution (see CPLR 5231), an installment payment order (see CPLR 5226), and restraining notice (see CPLR 5222). Moreover, CPLR article 52 contains provisions which expressly authorize private rights of action in other contexts (see CPLR 5222 [b]; 5232 [a] [judgment creditor or support collection unit is liable for damages sustained by reason of restraint or levy upon property not belonging to the judgment debtor]; 5222-a [c] [4]; [g] [judgment debtor may be *148 awarded damages for judgment creditor’s bad faith objection to the judgment debtor’s claim of exemption]; 5252 [employer liable to an employee for discrimination on the basis of a wage assignment or income execution]; 5239 [in a special proceeding to determine adverse claims to property, the court may award damages to any party adversely affected by a fraudulent claim]). Thus, the legislature clearly knew how to include a private right of action when it intended to do so, and the omission of any similar language in CPLR 5018 and 5203 evinces a legislative intent not to provide for a private right of action against the State to recover damages for an alleged improper docketing by the County Clerk (see Cruz v TD Bank, N.A., 22 NY3d at 74; Mark G. v Sabol, 93 NY2d at 722; Varela v Investors Ins. Holding Corp., 81 NY2d 958, 961 [1993]). “The fact that the legislature chose not to include a liability provision . . . militates against judicial recognition, by implication, of the broad private right of action urged by [the plaintiff]” (Cruz v TD Bank, N.A., 22 NY3d at 73.
“[T]he government is not an insurer against harm suffered by its citizenry at the hands of third parties” (Valdez v City of New York, 18 NY3d at 75). Here, Flagstar sustained damages as a result of the judgment debtor’s failure to pay his obligation and his sale of real property free of the judgment lien. The State did not owe Flagstar a special duty of care. Thus, it is unnecessary to address whether the State may invoke the defense of governmental function immunity (id. at 80).
Accordingly, the Court of Claims properly granted the State’s motion for summary judgment dismissing the claim, and properly denied the claimant’s cross motion for summary judgment on the issue of liability.
In light of our determination, we need not reach the State’s remaining contentions.
The order is affirmed.
Dickerson, Austin and Hinds-Radix, JJ., concur.
Ordered that the order is affirmed, with costs.