■    KAREN A. WHEELER, Respondent, v CITIZENS TELECOMMUNICATIONS COMPANY OF NEW YORK, INC., Appellant. [795 NYS2d 370]—

Mugglin, J. Appeal from an order of the Supreme Court (Best, J.), entered July 14, 2004 in Fulton County, which granted plaintiff's motion to set aside a verdict in favor of defendant and ordered a new trial.

Plaintiff began working for GTE, a local telephone company, as an operator in 1971. By the time GTE was acquired by defendant in July 1994, plaintiff had become a successful salesperson and she continued to work in this capacity for defendant at a base salary of $30,000 per year. In 1995, Daniel Maynard became plaintiff's supervisor. In October 1995, he raised plaintiff's salary to $35,000. In 1996, Michael Bentley was hired to work on the same sales team with plaintiff at a base salary of $45,000. His sales quota was less than plaintiff's, making it easier for him to earn sales commissions. In February 1997, plaintiff's base salary was raised to $42,000 and in June 1997, after defendant formed a major accounts division, plaintiff, on Maynard's recommendation, was promoted to this group at a base salary of $60,000, while Bentley, even though he asked Maynard for consideration for this promotion, was not. In early 1998, the major accounts division was disbanded. Plaintiff's compensation remained the same and Maynard again became her supervisor.

In February 1998, as a result of past difficulties, Maynard prepared a memorandum for use in meeting with plaintiff on February 20, 1998 to discuss and remedy, among other things, certain deficiencies in plaintiff's interpersonal and work relationships with coemployees. After looking at the memo for less than one minute, plaintiff threw it on Maynard's desk, pronounced it to be b——s——, and, according to Maynard, told him he would have her "letter" and that he had her "notice." In the process of storming from Maynard's office, plaintiff slammed the door into the wall. As a result, plaintiff was locked out of the building and the computer system. Several subsequent

meetings were held to try and reach an amicable resolution. Plaintiff, at these meetings, affirmatively asserted that she had not resigned. Nevertheless, when no resolution was reached, defendant sent plaintiff an e-mail on March 13, 1998, confirming that her resignation had been accepted, effective February 20, 1998.

Plaintiff sued, alleging that defendant discriminated against her on the basis of her gender in violation of Executive Law § 296 and that defendant violated New York's Equal Pay Law (*see* Labor Law § 194) by paying her less than it paid Bentley for substantially similar work. At trial, the jury answered three specific interrogatories as follows:

"Did the [p]laintiff resign?" NO

"Was the [p]laintiff terminated for misconduct?" YES

"Was the [p]laintiff paid at a rate less than an employee of the opposite sex in a discriminatory fashion?" NO

Supreme Court, as relevant to this appeal, found that the jury determination that plaintiff was terminated for misconduct was against the weight of the evidence and granted plaintiff's motion to set aside the verdict and ordered a new trial as to that issue. Supreme Court also, in view of the fact a retrial on question 2 had been granted, set aside the verdict as to the unequal pay question in the interest of justice because the question, as asked, may have implied a heightened standard of proof—i.e., an intent to discriminate—an element not found in Labor Law § 194. Defendant appeals.

To set aside a verdict on the basis that it is against the weight of the evidence, a reviewing court must determine " 'whether the evidence on the whole so preponderates in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence' " (*King v Jordan*, 265 AD2d 619, 619-620 [1999], quoting *Santalucia v County of Broome*, 228 AD2d 895, 896 [1996]; *see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). In setting aside the verdict with respect to question 2, Supreme Court placed heavy emphasis on statements made by defendant's counsel during his opening statement and his summation. Indeed, plaintiff argues that those statements are judicial admissions and should be conclusive against defendant on this issue. We disagree. It is obvious from reading the record that the theory of the defense was that plaintiff voluntarily resigned. This theory was promulgated

because, absent defendant's termination of plaintiff, there was no adverse employment action and, therefore, no viable claim of gender discrimination. Hence, at several places in the opening statement and again in summation, defendant's counsel argued to the jury that plaintiff was not terminated, not even for misconduct, but that she resigned. That having been said, it is obvious that the jury did not agree with this argument and determined that plaintiff had been terminated by defendant for misconduct. Nevertheless, termination does not equate, without more, to gender discrimination. Moreover, the record contains ample evidence of plaintiff's misconduct. Indeed, the insubordination which she exhibited on February 20, 1998 would have been reason enough to terminate her and there is not a scintilla of evidence that the termination was in any way motivated by her gender.

In addition, Supreme Court correctly recognized defense counsel's statements as arguments, and not as judicial admissions. Formal judicial admissions take the place of evidence and are concessions, for the purposes of the litigation, of the truth of a fact alleged by an adversary (*see* Prince, Richardson on Evidence § 8-215 [Farrell 11th ed]). Informal judicial admissions are facts incidentally admitted during the trial. These are not conclusive, being merely evidence of the fact or facts admitted (*see* Prince, Richardson on Evidence § 8-219 [Farrell 11th ed]). A review of the statements made by defendant's counsel during argument reveals that none are formal or informal concessions of a fact alleged by plaintiff.

Turning to the issue of unequal pay for substantially similar work, we again find that Supreme Court erroneously set aside this portion of the verdict. In determining the propriety of the question on the verdict sheet, the interrogatory must be examined in context with the court's charge (*see* Smith *v* Taylor, 304 AD2d 902, 903 [2003]). In this regard, we note no error in the charge given by Supreme Court. Secondly, we note that the record reveals no juror confusion on this issue. Lastly, if unequal pay is based on any factor other than gender (*see* Labor Law § 194 [1] [d]), there is no statutory violation. The record reveals a variety of factors, including Bentley's superior education, more sales experience, more management experience and previous salary level at the job he was leaving, all of which constitute nondiscriminatory reasons for initially employing him at a greater base salary than plaintiff.

Cardona, P.J., Crew III, Spain and Rose, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion denied and verdict reinstated.