# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 8
Ersin Konkur,
  Appellant,
  v.
Utica Academy of Science Charter
School,
  Defendant,
Turkish Cultural Center and High
Way Education, Inc.,
  Respondent.

David Goldbas, for appellant.
Matthew M. Piston, for respondent.

GARCIA, J.:

The issue presented in this appeal is whether Labor Law § 198-b, which prohibits

wage kickbacks, contains an implied private right of action. We conclude that no such

freestanding private right of action was intended by the legislature and therefore affirm.

Plaintiff Ersin Konkur, who worked as a math teacher at Utica Academy of Science Charter School, commenced the instant action against the school and High Way Education, Inc., doing business as the Turkish Cultural Center, after the school failed to renew his contract.  Plaintiff alleged that defendants Utica Academy and High Way were closely affiliated with Fetullah Gülen, a Turkish religious leader, and that plaintiff was coerced into making payments from his wages to High Way that were then funneled to Gülen's movement.  Plaintiff's complaint asserted six causes of action against both defendants, including a claim that High Way and Utica Academy jointly demanded and collected, "on threat of unemployment or demotion in employment, portions of [his] wage, salary, and [] overtime," which constituted "illegal kickbacks" in violation of Labor Law § 198-b. Plaintiff sought damages pursuant to Labor Law § 198 arising from that alleged violation.

Supreme Court dismissed all causes of action against High Way save the section 198-b claim, holding that, while section 198-b does not contain an express private right of action, "[t]he current status of the law is not settled" and there is "case law that provides a private right of action does exist on kickbacks."  The Appellate Division disagreed and reversed, dismissing the complaint against High Way in its entirety.  The Court held that "the legislature did not intend to create a private right of action for violations for Labor Law § 198-b, inasmuch as the legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself" (181 AD3d 1271, 1272 [4th Dept 2020]). We granted plaintiff leave to appeal (35 NY3d 915 [2020]).

Labor Law § 198-b prohibits "kickbacks" by making it unlawful for any person to "request, demand, or receive" part of an employee's wages or salary on the condition that

"failure to comply with such request or demand will prevent such employee from procuring or retaining employment." Violation of the statute is a misdemeanor offense (*see* Labor Law § 198-b [5]). Labor Law § 218 also provides for administrative enforcement of section 198-b by the Commissioner of the Department of Labor. The statute empowers the Commissioner to grant affected employees restitution and liquidated damages in addition to imposing civil penalties.

Because section 198-b contains no express private right of action, "plaintiffs can seek civil relief in a plenary action based on a violation of the statute 'only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history'" (*Cruz v TD Bank, N.A.*, 22 NY3d 61, 70 [2013], quoting *Carrier v Salvation Army*, 88 NY2d 298, 302 [1996]). As we recently reaffirmed in *Ortiz v Ciox Health LLC*, we apply a three-factor test to determine whether the legislative intent favors an implied right: "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme'" (— NY3d —, —, 2021 NY Slip Op 06425, *3 [2021], quoting *Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]). This test requires that "'all three factors must be satisfied before an implied private right of action will be recognized'" (*Ortiz*, — NY3d at —, 2021 NY Slip Op 06425, *3, quoting *Haar v Nationwide Mut. Fire Ins. Co.*, 34 NY3d 224, 229 [2019]). Application of this test to the statute here leads us to conclude that section 198-b affords plaintiff no private right of action.

Plaintiff satisfies the first factor as a member of the class of persons the statute was designed to protect. Plaintiff also satisfies the second factor, which requires an analysis of "'what the Legislature was seeking to accomplish when it enacted the statute'" and a determination of "'whether a private right of action would promote that objective'" (*Ortiz*, — NY3d at —, 2021 NY Slip Op 06425, *5, quoting *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 38 [1999]). The general intent of article 6 of the Labor Law is to "strengthen . . . the rights of employees" (*see Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 223 [2000]), and the law was designed to protect employees coerced into kicking back part of the wages to which they are entitled (*see* Mem of Exec Secretary and Director of Research, Law Revision Commn, Bill Jacket, L 1939, ch 851 at 11). An individual plenary right would arguably advance this goal by allowing those affected by kickbacks an opportunity to vindicate this right individually, alongside the investigative and enforcement powers of the Labor Department and Attorney General.

The third factor, however, is the "most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others" because it "demonstrates that the legislature considered and decided what avenues of relief were appropriate" (*Ortiz*, — NY3d at —, 2021 NY Slip Op 06425, *3-5; *see also CPC Intl. v McKesson Corp.*, 70 NY2d 268 [1987]). Here, "'[t]he Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself'" (*Cruz*, 22 NY3d at 71, quoting *Mark G. v Sabol*, 93 NY2d 710, 720 [1999]; *see also Ortiz*, — NY3d at —, 2021 NY Slip Op 06425, *5 [citing cases]; *Carrier*, 88 NY2d at 302-303; *CPC Intl.*, 70 NY2d at 276-277). As we have repeatedly explained,

> "'the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature'"

(*Cruz*, 22 NY3d at 70-71, quoting *Sheehy*, 73 NY2d at 634-635 [citation omitted]). It is on this factor, in the face of significant enforcement mechanisms provided for in the statute, that plaintiff's argument fails.

The available avenues for enforcement are clearly pronounced in the text and the statutory history. Section 198-b was first enacted within the Penal Law to address the prevalent issue of kickbacks in public works projects but was soon amended to apply in all employment contexts (*see* Rep of Comm on Legislation, NY County Lawyers' Assn, Bill Jacket, L 1934, ch 171 at 4; Mem of Comm on Crim Cts, Law and Pro of Assn of Bar of City of NY, Bill Jacket, L 1939, ch 851 at 7). Later amendment gave the Labor Commissioner administrative enforcement authority (*see* L 1989, ch 177, § 2). The provision was transferred to the Labor Law in 1965 as part of an overhaul of the Penal Law aimed at placing criminal statutes with their relevant civil subject matter counterparts (*see* Letter from Richard J. Bartlett, Commission Chair, to Sol N. Corbin, Counsel to Governor, July 1, 1965, Bill Jacket, L 1965, ch 1030 at 4-5). As the Labor Department noted at the time, the change in the law's placement meant differences in how it was criminally enforced (*see* Mem of Off of Indus Commr, St Dept of Labor, Bill Jacket, L 1965, ch 1031 at 30). District Attorneys typically prosecuted violations of the Penal Law, but as a Labor

Law violation, prosecution is undertaken by the Attorney General upon referral from the Department following an investigation (*id.*).

A second enforcement mechanism was created in 1989 when the Legislature added section 198-b to a list of violations in section 218 for which the Labor Department could seek civil penalties, in addition to restitution, liquidated damages, interest, reinstatement of the employee's former position, and back pay (*see* Labor Law § 218 [1]). The Labor Department supported the change because, while the existing criminal enforcement was an important deterrent, "more flexible remedies [were] also necessary to ensure that restitution is, in fact, paid to employees and that they are reinstated to employment" (Letter from Barbara C. Deinhardt, Deputy Commr of Labor for Legal Affairs and Counsel, St Dept of Labor, to Evan Davis, Counsel to Governor, Bill Jacket, L 1989, ch 177 at 10). Specifically, section 218 gives the Commissioner authority to order "payment back to the employee of the amount of wages . . . unlawfully received plus liquidated damages in the amount of one hundred percent of unpaid wages" plus interest (Labor Law § 218 [1]). That section also provides for the imposition of civil penalties based on, among other factors, the size of the employer, the gravity of the violation, and the employer's history of violations (*id.*). Any employee, or the appropriate collective bargaining agent acting on his or her behalf, may file a complaint with the Commissioner (*see id.* §§ 196, 196 [a]).

The statutory scheme therefore expressly provides two robust enforcement mechanisms, "indicating that the legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted" (*Cruz*, 22 NY3d at 71). We therefore

decline "to find another enforcement mechanism beyond the statute's already 'comprehensive' scheme" (*Sabol*, 93 NY2d at 720). [1]

Nevertheless, plaintiff maintains that a private right of action for kickback violations should be inferred from section 198, which provides that "[i]n any action instituted . . . upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee . . . reasonable attorney's fees" (*see* Labor Law § 198 [1-a]). Likewise, the dissent asserts that section 198 applies to any "action for wages" (dissenting op at 6). As we have made clear, the attorney's fees remedy provided for in section 198 (1-a) must relate to "wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6" (*Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 459 [1993]). And it is Labor Law § 191 that "generally regulates payment of wages by employers and creates reciprocal rights of employees" (*id.* at 461). While at least one federal court has held that section 198-b qualifies as such a wage claim under section 198 (*see Chu Chung v New Silver Palace Restaurants, Inc.*, 272 F Supp 2d 314, 317 [SD NY 2003] [section 198 assumes employees may institute actions pursuant to the provisions of article 6, including section 198-b]), we disagree.

Where the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action (*see Kloppel v HomeDeliveryLink, Inc.*, 2019

---

[1] The practical implications of the dissent's proposed approach to interpreting legislative intent, that because it is "paternalistic" for a statute to provide for enforcement only by the Attorney General or another executive branch official, we should infer a private right of action in *all* such statutes (*see* dissenting op at 12-13), would be contrary to our caselaw, to say the least (*see Ortiz*, — NY3d at —, 2021 NY Slip Op 06425, *4-5; *Cruz*, 22 NY3d at 70-71).

WL 6111523, *3, 2019 US Dist LEXIS 199891, *7-8 [WD NY, Nov. 18 2019, No. 17-cv-6296-FPG-MJP] ["the Legislature carved out express private rights of action for many provisions of the (Labor Law), but not § 198-b, suggesting that the Legislature did not intend to do so"]; *Chan v Big Geyser, Inc.*, 2018 WL 4168967, *8, 2018 US Dist LEXIS 148291, *24 [SD NY, Aug. 30, 2018, No. 1:17-cv-06473 (ALC)] [same]).  For example, in 2010, section 198 was amended to add a private right of action for certain notice requirements in section 195 (*see* L 2010, ch 564, § 7).  A 2015 amendment clarified that section 194, which prohibits underpayment based on an employee's status in a protected class, can be individually enforced and that employees may recover treble damages for willful violations (*see* L 2015, ch 362, § 2).  As we noted in *Ortiz*, "[t]hat the legislature chose not to provide a similar remedy for [the provision at issue] is further evidence that it believed that the [statute's] existing remedies would be adequate" (— NY3d at —, 2021 NY Slip Op 06425, *5).  Contrary to the dissent's characterization, we do not hold that "the nonexistence of an express right" standing alone is "determinative" (dissenting op at 9).  In interpreting whether the legislature intended such a right despite that silence, the relevant point is that the legislature chose to provide for it in other provisions in this statutory scheme, but not for this one (*see Cruz*, 22 NY3d at 70-71).  Rather than support an implied right of action here, analysis of the remedies provided for in section 198 further supports the conclusion that a plenary private right of action for violations of section 198-b would be inconsistent with the comprehensive statutory enforcement scheme.[2]

---

[2] While the dissent claims that "our courts have, for decades, recognized" a common law cause of action "to recover civilly wages extorted in kickback schemes"

Plaintiff has not demonstrated that section 198-b meets the requirements of our well-established test for determining whether a private right of action can be implied from the statute.  Accordingly, the order of the Appellate Division should be affirmed, with costs.

---

(dissenting op at 3 n 1), the only support provided for that sweeping proposition is one decision from this Court involving Labor Law § 198-c (dissenting op at 2-3, citing *People v Trapp*, 20 NY2d 613 [1967] [upholding a criminal sentence of employer who failed to contribute to pension funds]) and a City Court breach of contract decision from 1940 (dissenting op at 2-3, citing *McNeill v Hacker*, 21 NYS2d 432 [NY City Ct 1940]). We point the dissent to the only State court decision to date that has permitted an individual claim for recovery under section 198-b, but note that it did so in a case where defendants did not challenge plaintiff's entitlement to a private right of action (*see Martinez v Alubon, Ltd.*, 111 AD3d 500 [1st Dept 2013]).

RIVERA, J. (dissenting):

Plaintiff Ersin Konkur worked as a teacher and claims that his employer and a third party threatened his employment unless he turned over part of the money he earned on the job. At first, plaintiff complied with the demands and paid up, but he eventually sued over

this alleged shake-down. Our courts have long recognized that an employee, like plaintiff, may sue for wages withheld or involuntarily paid as a kickback, and that the perpetrator is additionally subject to criminal prosecution. With the enactment of the Labor Law, the legislature expanded the rights and protections of employees against wage theft and coercion and reaffirmed the prohibition on kickbacks in section 198-b (2). The only question on this appeal is whether plaintiff has the right to sue for conduct expressly outlawed and seek the broad range of relief available under the Labor Law, or whether his only recourse is to hope for a state official to act on his behalf. I conclude that the Labor Law cannot be read as the majority does—as a bar on an employee's personal right to sue for extorted wages. I dissent.

## I.

## A.

A demand for a kickback payment on threat of adverse employment consequences or denial of employment is nothing less than unlawful extortive conduct and a scourge on the workplace. The worker who is extorted in this fashion has a private action right of action against the perpetrators (*see e.g. People v Trapp*, 20 NY2d 613, 616 [1967] [noting defendants who extort kickbacks "must respond civilly"]; *see also McNeill v Hacker*, 21 NYS2d 432, 435 [NY City Ct 1940] [citing Penal Law's anti-kickback provision as evidence of a broader legislative intent justifying civil recovery of wages improperly

withheld in a kickback scheme]).[1] An employee may also file a complaint with the Commissioner of Labor (*see* Labor Law 196-a [a]).

In addition to private civil litigation and regulatory oversight, the perpetrator of a kickback demand has historically been subject to criminal prosecution by the state, initially, for the crime of extortion (*see* former Penal Law §§ 850, 851). The more targeted criminalization of "kickback" schemes targeting workers and job applicants dates to 1934, with the enactment of Penal Law § 962 (*see* former Penal Law § 962 [2]; *People v Sherman*, 201 Misc 780 [Gen Sess 1951]; *People v Fay*, 182 Misc 358 [Sup Ct, Orange County 1943]). According to the legislative history, then-existing Penal Law and Labor Law provisions had proved ineffective in addressing what had become widespread conduct in the trades and its adverse impacts, especially its destabilizing and corrosive effects in the public works sector (*see* Letter from NY St Fedn. of Labor, Mar. 29, 1934, Bill Jacket, L 1934, ch  171 at 6 [explaining how "the so-called 'kick-back' system . . . has become prevalent on public work in some sections of the state"]; Letter from Assembly Introducer

---

[1] The majority resists the import of these cases, suggesting that they are an unavailing attempt to demonstrate a longstanding private right of action *under the Labor Law* (*see* majority op at 8 n 2). But, of course, it is obvious from my statement and citations that these cases instead show that courts have, for decades, recognized a cause of action at common law to recover civilly wages extorted in kickback schemes. Notably, and certainly quite unintentionally, the majority's citation to *Martinez v Alubon, Ltd.* (111 AD3d 500 [1st Dept 2013]) helpfully illustrates that New York courts have *also* identified a private right of action under section 198-b of the Labor Law. That the *Martinez* defendants did not challenge plaintiff's entitlement to a private right of action is of no moment, as the First Department made clear by its citation to *Chu Chung v New Silver Palace Rests., Inc.* (272 F Supp 2d 314 [SDNY 2003]) that it recognized a cause of action under section 198-b (*see* 111 AD3d at 501). Whether or not defendants contested the existence of that cause of action is immaterial given that the First Department's determination was necessarily a question of law.

Ernest Lappano, Apr. 6, 1934, *id.* at 8 ["By use of the 'kick-back' unscrupulous contractors have been able to underbid other contractors who do not engage in such practices and pay the prevailing rate of wages"]). Reports from the time reveal that kickbacks were a significant drain on workers and the economy generally (*see e.g. Raid Opens Drive on Market Racket*, NY Times, Jan. 24, 1934, at 19 [describing how one "racket . . . (took) $100,000 a year from workers"—at the height of the Great Depression—by requiring them to "'kick back' 20 per cent of their wages"]). The bill's introducer, Assemblyman Ernest Lappano, urged its passage and noted that it would "add[] strength to the provisions of the Labor Law," explaining that the

> "recent exposure of the prevalent practice commonly known as the 'kick back' justifies the enactment of a law such as this. Persons engaged in public works should be protected from unscrupulous contractors who attempt to evade the provisions of the Labor Law . . . While threats to have a person discharged unless the worker pays a certain sum of money, have been held to constitute extortion under section 851 of the Penal Law . . . the section is not broad enough to include threats to the effect that failure to comply with the request or demand will prevent the workman from procuring employment" (Bill Jacket, L 1934, ch 171 at 7-8).

In 1965, the language of section 962 of the Penal Law was moved to the Labor Law, where it remains today as section 198-b (2) and reads,

> "Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services, be such promise in writing or oral, or shall be entitled to be paid or provided prevailing wages or supplements pursuant to article eight or nine of this chapter, it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary,

supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment. Further, any person who directly or indirectly aids, requests or authorizes any other person to violate any of the provisions of this section shall be guilty of a violation of the provisions of this section" (Labor Law § 198-b [2]).

## B.

The Labor Law's overarching goal is to protect employees from wage law violations (*see generally Cammon v City of New York*, 95 NY2d 583, 590 [2000]; *see also P & L Group v Garfinkel*, 150 AD2d 663, 664 [2d Dept 1989] ["Labor Law §§ 197 and 198 reflect a strong legislative policy aimed at protecting an employee's right to wages earned"]; *see also Chu Chung v New Silver Palace Rest., Inc.*, 272 F Supp 2d 314, 317 [SD NY 2003] ["(T)he New York Labor Law reflects 'a strong legislative policy aimed at redressing the power imbalance between employer and employee'"], quoting *Saunders v Big Brothers*, 115 Misc 2d 845, 848 [Civ Ct, NY County 1982]). Article 6 of the Labor Law, entitled "Payment of Wages," "sets forth a comprehensive set of statutory provisions enacted to strengthen and clarify the rights of employees to the payment of wages" (*Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 223 [2000]). Indeed, the strengthening of employees' rights to timely and fair payment of their wages was the "over-all objective" of the legislature in enacting article 6 (*see Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 461 [1993]), which sought to "provide increased wage protection to employees" (*id.*, quoting Mem of Indus Commr., June 3, 1966, Bill Jacket, L 1966, ch 548). Section 198-b is one among these provisions and as a consequence sets forth the substantive right of an

employee to wages and supplements, undiminished by kickbacks. In other words, section

198-b (2) protects employees from a specific form of wage theft.

Article 6 also provides broad remedies for violations of its provisions. Specifically,

section 198 (1-a) of the Labor Law, entitled "Costs, remedies," provides:

> "In any action instituted in the courts upon a wage claim by an
> employee or the commissioner in which the employee prevails,
> the court shall allow such employee to recover the full amount
> of any underpayment, all reasonable attorney's fees,
> prejudgment interest as required under the civil practice law
> and rules, and, unless the employer proves a good faith basis
> to believe that its underpayment of wages was in compliance
> with the law, an additional amount as liquidated damages equal
> to one hundred percent of the total amount of the wages found
> to be due, except such liquidated damages may be up to three
> hundred percent of the total amount of the wages found to be
> due for a willful violation of section one hundred ninety-four
> of this article."

Section 198 (3) further provides that "[a]ll employees shall have the right to recover full

wages, benefits and wage supplements and liquidated damages accrued during the six years

previous to the commencing of such action, whether such action is instituted by the

employee or by the commissioner." The language of section 198 is clear and unambiguous:

in any "action for wages," the employee may recover wages, liquidated damages, costs and

attorney's fees. An employee may be further assisted by the Commissioner of Labor, who,

as head of the Department of Labor, is charged with enforcing the wage and hour laws (*see*

Labor Law § 198 [1-a]). In addition to the Commissioner's specific grants of power, the

Commissioner may pursue these same remedies on the employee's behalf, as an assignee

(*id.* § 198 [1] ["No assignee of a wage claim, except the commissioner, shall be benefited

by this provision"]). In other words, the Commissioner may so act only if the employee assigns the Commissioner their personal right of action.

As I have described, employees have a private right of action to recover unlawfully withheld wages, as provided in article 6, and employees like plaintiff have a private right of action against an employer or third party for money earned but taken as a kickback in violation of section 198-b (2) (*see* I.A., *supra*). The purpose and language of the Labor Law and article 6 establish the legislature's unwavering commitment to the broadest enforcement of an employee's rights to fairly earned wages under the law by providing for a private right of action, the remedies allowed under section 198, and continued criminalization of kickbacks.[2]

## II.

The analysis should end there, but the majority takes a different path, looking for what is missing rather than what is present in article 6. The majority, relying on two federal district court decisions, concludes that a private right of action can only exist if expressly

---

[2] The majority attempts to narrow the scope of protections afforded to employees in article 6 by suggesting that section 191 contains the entirety of privately cognizable claims (*see* majority op at 7, citing *Gottlieb*, 82 NY2d at 459). A cursory review of section 191 disproves that argument, as that section is concerned with claims arising out of the frequency and promptness of wage payments. Indeed, the majority's chosen quotation from *Gottlieb* supports my reading of the statute, as the Court in that case spoke of "the substantive *provisions* of Labor Law article 6," in the plural (82 NY2d at 459). If it were otherwise, the Court would have had no reason to note that "plaintiff did not plead any claim under Labor Law § 191 *or any other substantive provision of article 6*" (*id.* at 461 n 2 [emphasis added]). Moreover, section 198's reference to "any action instituted upon a wage claim" does not even mention section 191. And, finally, one need only look at the majority's own reference to section 194, which it holds out as an example of an article 6 provision containing an express right of action, to see that section 191 is not the exclusive source of rights that may be privately enforced by employees.

recognized in section 198-b (2) (*see* majority op at 7-8). As the argument goes, because violation of that section is a misdemeanor, and state officials have civil and criminal enforcement authority against the perpetrators of kickbacks, the legislature specifically proscribed a private right of action (*see id.* at 5-7). In fact, the Labor Law recognizes substantive rights to recover wages, which include a private right of action for kickbacks in section 198-b (2).

Given the simple fact that an employee has a Labor Law claim for unlawfully withheld or seized wages, including the particular brand of wage theft known as a kickback, there is no need to consider the existence of a right of action by implication (*see Cruz v TD Bank, N.A.*, 22 NY3d 61, 70 [2013] [explaining that, only "(i)n the absence of an express private right of action," will a court determine whether a private right of action "is fairly implied in the statutory provisions and their legislative history"]).[3] In any event, assuming that section 198-b (2) is not sufficiently "express" to establish the legislative intent in favor of a private right of action, the majority's application of our jurisprudence on implied rights is flawed. First, the majority places undue emphasis on the fact that there are express rights of action in *other* provisions of the Labor Law (*see* majority op at 7-8). As an initial matter, this Court's jurisprudence outlining when a private right of action may be found necessarily means that the absence of such an express right is not dispositive (*Cruz*, 22 NY3d at 70).

---

[3] The majority summarily concludes that plaintiff satisfies the first two factors for determining whether a private right may be fairly implied and focuses its analysis on the third factor: i.e., whether creation of such a right would be consistent with the legislative scheme (*see* majority op at 4). Therefore, I limit my analysis to the majority's application of that factor here.

The majority would render our caselaw meaningless if the nonexistence of an express right is determinative. Second, the provisions invoked by the majority as proof of the legislature's intent to affirmatively eliminate a private right of action for the anti-kickback provision do not, in fact, support that conclusion.

The majority's citation to section 195 is wholly unpersuasive. That section, entitled "Notice and record keeping requirements," imposes an obligation on employers to provide workers with written information about wages, tips, and various nonwage related matters. By its terms, a violation of this section would not give rise to a worker's wage claim because the failure to provide the information in the manner required by statute and the Commissioner of Labor would not in itself result in loss of wages. Thus, it was necessary for the legislature to provide remedies for employer violations. That the legislature's 2010 amendment to section 198—which "[p]rovide[d] statutory damages and a private right of action in cases where an employer fails to provide disclosures of wage rates or paystubs (as required under Section 195)" (Senate Introducer's Mem in Support, Bill Jacket, L 2010, ch 564 at 6)—created a wholly new cause of action, entirely distinct from existing wage claims under the Labor Law, was heavily emphasized by those who opposed the amendment (*see e.g.* Letter from Food Indus. Alliance of NY State, Inc., Dec. 3, 2010, Bill Jacket, L 2010, ch 564 ["This legislation . . . exposes (employers) to new and increased civil and criminal penalties, some of which apply *even where the employee was paid the correct salary*"] [emphasis added]).

As for its second example of section 194, the majority misunderstands the purpose of that provision. Section 194 of the Labor Law identifies limits on claims for wage

discrimination based on sex.[4] Specifically, this section circumscribes sex-based wage

disparity claims in certain circumstances by, for example, precluding claims for wage

differentials based on seniority and merit pay systems, and other non-sex-based bona fide

factors consistent with business necessity. The legislature's 2015 amendment of section

194 states that "nothing in this section shall be construed to limit the rights of an employee

provided under any other provision or collective bargaining agreement" (*see* Labor Law

§ 194 [4] [e]). The amendment, therefore, clarified that the limitations set forth in section

194 have no application to other causes of action predicated on sex discrimination in

wages.[5] While section 194 allows for some lawful wage disparities, there is no permissible

form of wage kickback under section 198-b, which states unambiguously that all kickbacks

are unlawful. Thus, the absence of similar language in section 198-b simply reflects that

the prohibition on kickbacks is absolute—as is the right to recover wages extorted thereby.

---

[4] It is no surprise that the legislature specifically sought to address this type of pay disparity, given that women continue to be underpaid relative to men performing comparable work (*see* United States Department of Labor, *Earnings Disparities by Sex*, https://www.dol.gov/agencies/ofccp/about/data/earnings/gender [last visited Jan. 26, 2022] [finding that, nationally, women earn $0.76 for every $1.00 a man earns]; Ariane Hegewisch et al., Institute for Women's Policy Research, *The Gender Wage Gap in New York State and Its Solutions* [2011], available at https://iwpr.org/wp-content/uploads/2020/12/C390.pdf [noting that the median New York female wage earner earns 82.8% of what her male counterpart earns]).

[5] The 2015 amendment could not possibly have "add[ed]" a private right of action (*see* majority op at 8), given that workers have been understood to have a right of action under the Labor Law's equal pay provisions for decades before the amendment (*see e.g. Lanzer v Fairchild Publ.*, 46 AD2d 644, 644 [1st Dept 1974]; *Harrison v Salomon Bros.*, 156 Misc 2d 341, 342 [Sup Ct, NY County 1992]; *Wheeler v Citizens Telecom. Co. of N.Y., Inc.*, 18 AD3d 1002, 1004 [3d Dept 2005]).

Further, and contrary to the majority's conclusion, the fact that the Attorney General and the Commissioner of Labor have enforcement authority under the Labor Law does not mean that the legislature foreclosed a private right of action in 198-b (2) or that recognizing such a right would be at odds with the statutory scheme. As the majority notes, broader law enforcement further discourages kickbacks (majority op at 4), and a private right of action in no way undermines state efforts to punish bad actors. On the contrary, the private right of action is intended to work *with* law enforcement by state actors to impose a heavy deterrent on extortive conduct in the workplace—which is, fundamentally, the purpose of the legislative scheme established in article 6 (*see AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6, 16-17 [2d Dept 2008] [explaining that, because article 6 "contains language indicating that wage claims asserted by individuals, as well as by the Commissioner, are permissible," a private right of action under section 191-b is entirely concordant with enforcement by public officials]). For instance, article 6 contemplates that the Commissioner will enforce the Labor Law with an employee's consent. Indeed, for the Commissioner to exercise full authority to recover lost wages and obtain other relief available under section 198, an employee must assign their claim to the Commissioner (*see* Labor Law § 198 [1]; *see also*, *AHA Sales, Inc.*, 58 AD3d at 16 [noting that section 198 repeatedly contemplates wage actions by both the employee and the Commissioner]). The statutory scheme therefore presumes that the right to recover unlawfully denied wages belongs, in the first instance, to the employee, who may choose to rely on the

Commissioner to vindicate that right (*see AHA Sales, Inc.*, 58 AD3d at 16-17).[6] A private

right of action permitting the recovery of wages extorted via a kickback is therefore wholly

concordant with the purpose and structure of article 6, and there is plainly no merit to the

majority's tacit suggestion that a private right of action would be "incompatible" with

enforcement by public officials (*see* majority op at 5, citing *Cruz*, 22 NY3d at 70-71).

III.

In addition to the flaws I have described in the majority analysis, the majority view

also fails to persuade for the simple reason that it leads to absurd results. If the majority is

correct, then an employee coerced into paying a kickback out of their wages would have

no recourse but to hope that the Attorney General or the Commissioner of Labor will

choose to pursue the individual employee's case. One would have to hope, too, that such

state officials would act expeditiously, since most employees depend on timely payment

of every cent of their wages (*cf.* Letter from Commr. Colleen C. Gardner, Dept of Labor,

Dec. 10, 2010, Bill Jacket, L 2010, ch 564 at 10 [citing "estimates that every year,

employers improperly underpay low-wage workers in New York City alone by more than

$1 billion. These substantial underpayments hurt working (people) who, despite their

efforts, are left with even less income to pay their rent, buy groceries, pay heating bills,

and otherwise provide for their families"]). The legislature could not have intended such a

---

[6] Indeed, were employees unable to privately vindicate their rights under the Labor Law to be free from exploitative kickback schemes and were, instead, forced to rely solely on the ability and interest of public officials to recover their extorted wages, the enforcement mechanisms provided under article 6 could hardly be called "significant" (*see* majority at 5), "robust" (*id.* at 6), or "comprehensive" (*id.* at 8).

paternalistic application of the Labor Law, a law intended to empower employees and level the uneven employment relationship that renders employees vulnerable to exploitative tactics like kickback demands (*see Saunders*, 115 Misc 2d at 848 [describing the Labor Law's "strong legislative policy aimed at redressing the power imbalance between employer and employee"]).[7]

If further persuasion is required, consider this hypothetical: You enter an agreement to regularly clean someone's private building, top to bottom, for $10 an hour. After a cleaning that takes you 100 hours, you show up on the first agreed payment day and your employer pays you for 80 hours and keeps the rest, saying it is your "gift" to the employer for hiring you and maintaining you on the payroll. This is repeated over several months and pay periods. According to the majority, you cannot sue under the Labor Law. And if state officials do not act against the employer, you have no recourse. You did the work, but you will not get the full wages you're owed, nor the additional remedies the legislature

---

[7] The majority mischaracterizes my analysis when it suggests that my proposed approach would imply a private right of action whenever a statute provides for enforcement by a public official (*see* majority op at 7 n 1). Rather, I conclude that a private right of action is expressly provided by section 198-b (1) and that, even if that were not the case, implying one would accord with the statutory scheme and further the legislative intent behind article 6 by working in tandem with enforcement by public officials. Thus, the majority's attempt at distraction fails, as my analysis is grounded in legal doctrine and established rules of interpretation. Tellingly, the majority does not try to defend the obvious result of its misapplication of the third *Sheehy* factor, which leaves an employee who has been extorted out of their wages with no private recourse under the Labor Law. The majority's approach flatly contradicts the legislative intent underlying the statute, which is meant to "redress[] the power imbalance between employer and employee" (*Saunders*, 115 Misc 2d at 848), and forces exploited employees to rely on the beneficence and limited resources of public officials in order to recover the wages they have earned. "Paternalistic" is a fitting descriptor for this sad consequence of today's decision.

allows. Compare the employee who has the same arrangement and worked the same hours, but the employer says that, although having previously agreed to a wage of $10 an hour, they are only going to pay the employee $8 an hour. Presumably, that is the type of wage claim that even the majority would recognize is actionable under the Labor Law by the employee. There is no rational basis for treating you and the other employee differently. Certainly, if your wages were extorted via kickback, you would not be comforted by the fact that the Attorney General and Commissioner *might* enforce the Labor Law on your behalf.

Wage theft is wage theft, no matter how the scheme is structured, and an employee is entitled to be paid for their labor in accordance with the wage laws. When an employer violates those laws, they are liable for a wage claim and other remedies provided by article 6. If they demanded a kickback, then they are also subject to criminal prosecution for a misdemeanor.

## IV.

Labor Law § 198-b (2) prohibits kickbacks and recognizes an employee's right to payment of wages free of such coercive conduct. An employee who asserts this right is entitled to seek the full range of remedies provided in section 198 in a wage action premised on a kickback demand. I read article 6 as expressly providing this substantive right. But even if the right is not express, there is no legal obstacle to recognizing an implied private right of action. Certainly, there is no basis to adopt the majority's extreme view that the legislature not only failed to include an express right but further intended to prohibit such

a right by implication, simply because of the supposed existence of express rights of action in other provisions of the Labor Law. There is no sense to that analysis.

Therefore, I would reverse the Appellate Division, deny the motion to dismiss, and permit plaintiff's action to proceed.

Order affirmed, with costs. Opinion by Judge Garcia. Chief Judge DiFiore and Judges Singas and Cannataro concur. Judge Rivera dissents in an opinion, in which Judge Wilson concurs. Judge Troutman took no part.

Decided February 10, 2022